**Walter William LAMBERT, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15061.**

Court of Criminal Appeals of Oklahoma.

May 20, 1970.

Jay Dalton, Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., W. Howard O'Bryan, Jr., Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Walter William Lambert, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County for the crime of Murder; his punishment was fixed at life imprisonment; and a timely appeal has been perfected to this Court.

Succinctly stated, the evidence on behalf of the State established that on the evening of November 9, 1967, Deann Benton, defendant's ex-wife, was drinking beer at the Saloon Tavern when the defendant entered, stayed a short time and left, returning a few minutes later to the bar where he engaged in a brief conversation with his ex-wife. She turned her head away from the defendant seated beside her, and he shot her in the back of the head with a .22 caliber loaded pistol and she fell to the floor.

The State's witnesses requested that the defendant turn over the pistol and surrender himself to the police, but he refused to do so, leaving the tavern on foot and proceeding to a liquor store where he purchased a half pint of Vodka. The defendant made a telephone call, consumed most of the Vodka and was thereafter arrested by the police. He was advised of his constitutional rights but refused to disclose the location of the weapon until the next day when, after again being advised of his constitutional rights and the Miranda warning, he led the officers to the location where they recovered the death weapon.

Defendant testified in his own behalf that he and his ex-wife had had a stormy and turbulent marriage during which she had inflicted personal injuries on him by

striking him with a glass ashtray; that because of her amorous affairs with younger men he had been injured several times by them and that he was fearful of the deceased. He testified that he entered the tavern on the evening in question at the request of the deceased who had left a note on his automobile that he meet her there. Upon arriving at the tavern he observed a larger man seated next to her at the bar and he became apprehensive and left, returning a short time thereafter when he realized that she had invited him to the tavern. He testified that after a short conversation, she removed a pistol from her purse and that he struggled with her, gaining control of the weapon, which was accidentally discharged, resulting in her death. He could not remember ever having been advised of his rights by the police authorities. Defendant's testimony was that the death weapon belonged to his son who had loaned it to him and that apparently the deceased had removed it from his tackle box prior to their divorce.

■■ It is first contended that the trial court made improper and prejudicial remarks to the jury during the course of the trial and the defendant was prejudiced thereby. Under this proposition it is contended that the trial court erred in questioning certain witnesses during the course of the trial. Our examination of the record leads us to conclude that in the instances cited by the defendant in the brief and other instances appearing in the record, the court did question witnesses in order to clarify for the benefit of the jury, the somewhat nebulous answers given by the witnesses, but neither the form of the questions nor the judge's conduct during said questioning tended in any way to indicate anything other than a desire that the facts be clearly set forth in order to aid the jury in their determination. In Henderson v. State, Okl.Cr., 385 P.2d 930, we stated:

"A trial judge has the right, in the exercise of his discretion, to ask of any witness such questions as will tend to elicit the truth, and so long as the judge does

not, by his questions or conduct, indicate his views as to the matters at issue, a defendant will not be heard to complain of any question asked by him which is reasonably calculated to elicit the truth."

■ It is further argued under this proposition that the trial court, in ruling on objections made, unnecessarily rebuked counsel for defense in the presence of the jury, thus prejudicing the defendant by rendering ineffective counsel's conduct of the trial. Here, again, an examination of the entire record discloses that although it was necessary for the court to make certain rulings during the conduct of the trial, such admonitions were directed at both counsel for the State and the defendant and indeed, were occasioned by the argumentative and sometimes misleading manner in which questions were propounded and objections made by both sides. The only conclusion to be drawn from an examination of the entire record is that the trial court's actions were directed to achieving a fair and impartial trial for both the defendant and the State and not marred by any improper misconduct of the respective parties. We find the defendant's first assignment of error without merit.

■ It is next urged that the trial court erred in refusing to grant defendant a mistrial for the reason that the defendant had not been allowed a pre-trial examination of the death weapon and other evidence taken from the defendant's automobile. At the conclusion of the State's evidence, the defendant filed a Motion in which he sought a mistrial and a hearing was conducted outside the presence of the jury. From the statements of counsel offered at said hearing it appears that counsel for defendant, before the preliminary magistrate, filed a motion for examination of the death weapon. The magistrate overruled his application for pre-trial inspection at that time, but the prosecutor agreed to allow the defendant pre-trial inspection of the death weapon and to transmit to him any report he received as a result of any examinations made. The reason given for refusing ex-

amination of the weapon at that time was that the weapon had been transmitted for F.B.I. examination. Counsel for defendant made several other requests for examination of the weapon and the prosecutor consulted with the police department who advised him that the weapon had not been returned. Some time elapsed and finally the prosecutor was advised by the Tulsa Police Department that the gun and shell cartridge had not been transmitted for examination through inadvertance; whereupon he directed that they be transmitted to the State Crime Bureau Agent, Mr. Ray Lambert. The weapon and cartridge were examined by Mr. Lambert and when the weapon was returned to the Tulsa Police Department, counsel for defense was permitted to examine it before trial. Counsel for defense made no motion for continuance based upon a request to examine any of the articles in police custody in the trial court, but instead announced ready for trial. Thereafter he requested to be allowed examination of all articles in possession of the Tulsa Police Department and the judge advised him to issue a subpoena duces tecum. Said articles were brought to court in accordance with the subpoena duces tecum; the gun, shell cartridge and spent bullet were introduced on behalf of the State after identification and at the court's direction all exhibits delivered in accordance with the subpoena were made available for examination by counsel for the defense prior to his making his opening statement and presenting evidence on behalf of defense. We are of the opinion that the trial court properly overruled the Motion for a Mistrial since it does not appear that the defendant ever made a timely request in the trial court for an examination of the exhibits prior to announcing ready for trial. It does appear that he was permitted to examine the weapon in the possession of the authorities prior to trial and all articles in possession of the authorities were brought to the court and examined by the defendant prior to his making his opening statement and presenting his defense. Counsel for the defendant conceded in the trial court that the prosecutor had acted in good faith. He further admitted that he did not know what an examination of the other articles would yield relating to his defense. In light of the entire record the defendant's admission that he had accidentally fired the fatal shot, his pre-trial inspection of the weapon and trial examination of all exhibits in the custody of the police department during trial, failed to disclose the suppression of anything which might have been useful to the defense. We are of the opinion that this assignment of error is also without merit.

█ Defendant's next contention that the trial court erred in refusing to suppress certain incriminating admissions made by the defendant while in custody before being fully advised of his constitutional rights, gives little weight to the testimony of officers that the defendant had been thoroughly advised of his constitutional rights prior to his making any incriminating statement or admission, and he understood these rights. Certainly, there is ample evidence in the record to support the trial court's ruling on the admissibility of defendant's statements made in custody and we are, therefore, of the opinion that this assignment of error is without merit. In arriving at this conclusion, the trial court had before him for his consideration *all* of the evidence bearing on this issue, together with evidence of the consumption of a quantity of Vodka by the defendant prior to his arrest, and while there is some conflict in the evidence, there was sufficient evidence to support the ruling of the trial court and his ruling thereon will not be disturbed on appeal.

█ It is lastly contended that the verdict of the jury and punishment imposed is excessive and a result of passion and prejudice. We fail to see how the jury could have arrived at any other verdict than that the defendant was guilty of premeditated Murder by deliberately shooting his ex-wife in the head from behind, and bearing in mind that the punishment for the crime of Murder is either life imprison-

ment or death by electrocution, we are of the opinion that this assignment of error is not supported by the record.

In conclusion, we observe that the evidence amply supports the verdict of the jury, the record is free of any error which would justify modification or reversel, the punishment imposed is the minimum possible for the crime of Murder and for those reasons, the judgment and sentence is affirmed.

BRETT, P. J., concurs.

NIX, J., dissents on question of law.

NIX, Judge (dissenting).

I do not feel that a trial judge should participate in the interrogation of witnesses during a trial. It is his duty to preside over the trial, maintain decorum, pass on questions of law, and instruct the jury on the law applicable to the case at bar. Because of his respected position it is so easy for him to influence the jury that it is a much better policy for him to refrain from interrogation of witnesses.