Joe Bentley **WARREN**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–16656.

Court of Criminal Appeals of Oklahoma.

March 29, 1972.

Don Anderson, Public Defender, Oklahoma City, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., James E. Briscoe, Legal Intern, for defendant in error.

BUSSEY, Presiding Judge:

Joe Bentley Warren, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Oklahoma County, Oklahoma for the offense of Robbery with Firearms. His punishment was fixed at ninety-nine (99) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Carole Davis testified that on August 28, 1970, she was employed at the Humpty Dumpty Super Market at 1801 Northwest Sixteenth Street in Oklahoma City. At approximately 9:45 a. m., a young man wearing a black net stocking mask over his face approached her, pointed a gun in her face, and demanded the money that the armed truck had just delivered. She identified State's Exhibit Number Two as being identical to the weapon used in the robbery. She gave $24,500.00 to the masked man.

Lelond Morris testified that he was employed as a pharmacist at the super market on the morning in question. At approximately 9:45 a. m., a man wearing a stocking mask appeared at the pharmacy cage, brandishing a pistol, and ordering him and a fellow employee, Linda Dawson, to go to the front office. He observed another masked subject at the office, robbing Carole Davis. After obtaining the money, the two masked persons left together. He could not positively identify the defendant, because of the mask, but pointed out the defendant as "an individual that resembled the frame and type of man that put the gun in my face." (Tr. 119)

Linda Dawson testified that she was in the pharmacy cage when the masked person appeared. Her testimony did not differ substantially from that of Morris. After the two robbers left, she went to the front of the store and observed a 1960 Chevrolet turning around, and inside the car, a man wearing a mask raised up and ducked back down. She obtained the license number of the vehicle, XW–1286.

She identified the driver of the vehicle in court as Katey Ann Grizzle.

Katey Ann Grizzle, who was granted immunity, testified that she was eighteen years old, and was also charged as a defendant in the robbery. She, the defendant, and one J. B. Littleton, came to Oklahoma City from Joplin on the morning of August 28, planning to rob a grocery store. They stole a car from behind a doctor's office in Capitol Hill and proceeded to the Humpty Dumpty store on Sixteenth Street. The defendant and Littleton put hose on their heads and entered the store; they came out of the store carrying a brown paper bag and she drove away. They abandoned the stolen vehicle and got another car; they picked up Vickie and drove to Joplin, Missouri. The money was divided between her, Littleton, and the defendant.

Harold Craftman, an officer assigned to the investigation and intelligence division of the Missouri State Highway Patrol, testified that on September 12, 1970, he investigated a shooting incident involving several persons at the Aztec Club in Willow Springs, Missouri. He observed the body of J. B. Littleton, lying just in front of the club. In Littleton's car, he found plumbing invoices which led him to a farm near Mountain View, Missouri. Officer Craftman obtained a search warrant for the farm house, and upon searching the same, he ascertained that the defendant and one Vickie Kautzman were living there. Upon ascertaining that the defendant had been taken into custody at a motel in Mountain View, he proceeded to the motel room. A search of the room revealed two purses, one full of money, the other containing Vickie's identification, as well as a .38 caliber revolver. He further identified $2,809.00, and a .38 caliber police revolver, State's Exhibit Number Two, which was taken from the body of Littleton. After conducting an Evidentiary Hearing outside the jury's presence, concerning the giving of the Miranda warnings, the officer was permitted to testify as to a statement made by the defendant.

The defendant was advised of his rights against self-incrimination, and initially refused to make a statement. The following day, after being again advised of his "Miranda rights," the defendant made a statement to Craftman and Officer Clovis of the Oklahoma City Police Department, admitting his participation in the robbery.

Officer Clovis of the Oklahoma City Police Department testified that he investigated the robbery, and obtained a tag number of both the first and second cars used in the robbery. This information was broadcast nationally, and upon learning that the defendant was in custody of Missouri authorities, he proceeded to West Plains, Missouri.

He testified that he advised the defendant of his "Miranda rights," whereupon the defendant made both an oral and a written statement in which he admitted his participation in the robbery.

The defendant did not testify, nor was any evidence offered in his behalf.

■ The first proposition asserts that the defendant's confession was improperly induced by an agreement which the state dishonored. Defendant argues under this proposition that the defendant confessed to the offense only after Officer Clovis promised the defendant that he would recommend twenty years imprisonment. We are of the opinion that the Record does not support this contention.

Officer Clovis testified as follows:

"Q. Did you have any agreement with him as to how much time you would recommend to the District Attorney if he would sign the statement?

"A. I told him at this time that I could not promise him any set amount of time; that I would tell the District Attorney that he had—

" * * *

"Q. What was the discussion regarding the amount of time?

"A. I advised him that I could not set the time; that it was up to whatever procedure was followed. That I had no control over the amount of time he would get."

" * * *

"Q. Did you discuss, as an inducement to sign the statement, twenty years recommendation by you to the District Attorney's office in that amount?

"A. Not for an inducement for signing the statement, no.

" * * *

"Q. Why did you discuss twenty years? What was he going to do for twenty years?

"A. Well, he said—*after he admitted it, he said what was going to happen. I said, 'Well, I don't know what the procedure will be.' I said, 'Most cases start at twenty-five years.' And he shook his head and he said, 'Well, I don't think I could do twenty-five years.' He said, 'How about fifteen?' and I said that there would be no chance."* (Emphasis Added) (Tr. 291, et seq.)

We further observe that at the conclusion of the Evidentiary Hearing, the Court stated:

"THE COURT: The Court, having heard the testimony of two police officers and the defendant, it is the Court's conclusion that there has been a substantial compliance with 'Miranda' and a substantial compliance with Peterson versus the State, as recorded in 473 Pacific; and from the testimony offered, concludes that the statement reflected by State's exhibit number 13 is a voluntary one and should be received by the jury for their consideration. . . ."

In Lambert v. State, Okl.Cr., 471 P.2d 935, we stated in the second Syllabus:

"When the evidence is taken outside the hearing of the jury on a Motion to Suppress incriminatory statements made by an accused while in custody and there is sufficient evidence to support the ruling of the trial court that the defendant had been thoroughly advised of his constitutional rights prior to making any statement and knowingly and intelli-

gently waived such rights and made incriminatory statements, the court's ruling will not be disturbed on appeal."

We are of the opinion that there is sufficient evidence to support the ruling of the trial court in the instant case, and that as such, the court's ruling will not be disturbed. We, therefore, find this proposition to be without merit.

 The final proposition contends that the punishment is excessive. We have repeatedly held that the question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case, and the Court of Criminal Appeals does not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances, the sentence is so excessive as to shock the conscience of the Court. We need only to observe that the ultimate effect of this offense resulted in the death of the co-defendant, Littleton, and an innocent young bystander. We cannot conscientiously say that the sentence imposed shocks the conscience of this Court. The judgment and sentence is, accordingly affirmed.