**Joe Lynn BELL, Apellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–18137.**

Court of Criminal Appeals of Oklahoma.

June 25, 1973.

Michael P. Sullivan, Leach, Sullivan, Sullivan & Green, Duncan, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Robert Dennis, Legal Intern, for appellee.

OPINION

BLISS, Presiding Judge:

This is an appeal from a denial of post-conviction relief in the District Court of Stephens County, Oklahoma. Appellant, hereinafter referred to as defendant, was charged in the District Court of Stephens County with the crime of Robbery With Firearms, After Former Conviction of a Felony. After a trial upon the merits, defendant was found guilty and convicted by a jury. His punishment was fixed at a term of twenty-five (25) years in the state penitentiary. Defendant's initial attempt to appeal to this Court was dismissed for having not complied with the Court rules pertaining to perfecting appeals within six months after judgment and sentence.

Thereafter, defendant filed his Application for Post-Conviction Relief in the District Court of Stephens County, Oklahoma. Said Application was denied by the trial court, and an Order Denying Application for Post-Conviction Relief was entered on January 24, 1972. From said denial of post-conviction relief, a timely appeal has been perfected to this Court.

In its Order Denying Post-Conviction Relief, the trial court made essentially the following findings of fact and conclusions of law which are relevant to this appeal and the propositions of error asserted in defendant's brief, to-wit:

"The Defendant further objected to introduction of exhibit 11 being his signed waiver of Miranda rights and objected to exhibit 13 being his consent to search. Suffice it to say that the Court finds from the transcript that the defendant was fully and adequately advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, as shown by the uncontroverted evidence, also he was fully and adequately advised of his Fourth Amendment rights in searching his house and automobile. The Court finds and rules that all testimony given by the officers as to state-

ments made by the defendant at the time and after he was suspected and accused of the robbery, and all evidence obtained as a result of the search of his home and automobile and admitted during the trial, were legally obtained with the consent of the defendant, after he knowingly and voluntarily, fully understanding his rights under the Fourth and Fifth Amendments, and knowing the consequences thereof, intelligently waived those rights.

\*     \*     \*     \*     \*     \*

"In conclusion, the Court finds that the defendant, Joe Lynn Bell, had and received a fair and impartial trial in this cause, in a court having jurisdiction of the offense and the defendant, and the punishment assessed by the jury was well within the limits prescribed by law and nothing appears in the record which would justify a new trial nor modification of the judgment and sentence nor release of the defendant under the provisions of the Post-Conviction Relief Act, Title 22 O.S.1971 Sec. 1080 et seq."

The trial court, based upon said findings of fact and conclusions of law, denied defendant's application, from which final order defendant perfected this appeal.

Evidence at the trial adduced that R. M. Marine and his wife had just gone to bed in their home in Duncan, Stephens County, Oklahoma, on the night of February 4, 1970, when they heard a knock at the front door. Mr. Marine went to the front window and asked what the person wanted. The person, later identified as one of the co-defendants, Ardnell Davis, replied that she wanted to use the telephone to call an ambulance. Mr. Marine then opened the front door to find a .410 shotgun pushed into his face by Miss Davis. He grabbed the gun and struggled with Miss Davis into the front yard, at which time he was struck in the head from behind with a club. He was later pushed down in the street and struck again. Mr. Marine made his

way back to the house while being pursued by the person hitting him. He tried to slam the door but was pushed to the living room where he observed another person beating his wife with a .22 pistol. The assailants demanded money which they got from Mr. Marine. After taking approximately $30.00, they completely ransacked the house and then left. Mr. Marine identified the defendant as one who was hitting him with the club.

Mrs. Marine testified to substantially the same as did her husband. She too identified the defendant as being in her house on the night of February 4, 1970.

Thereafter, on or about February 10, 1970, Ardnell Davis voluntarily went to the courthouse and gave a voluntary statement concerning her participation in the robbery and implicated one Rufus McGee and the defendant. Her testimony further substantiated the testimony of Mr. Marine.

On the same day, after Davis gave her statement, defendant was called up to the District Attorney's office, advised of his Miranda rights, and asked if he understood them, to which he said that he did, and he then executed a waiver of his rights and a written permission to search was secured from defendant and Rufus McGee. Defendant objected to the introduction of these exhibits and to the testimony from the officers as to the statement given by the defendant.

At the trial, the court conducted a Jackson v. Denno [1] hearing as to the admissibility of the exhibits and as to the testimony of the officers concerning their conversation with defendant. The court found that defendant was fully advised of his constitutional rights and that he knowingly and voluntarily waived those rights, knowing the consequences of his waiver. The officers were then permitted to testify before the jury that defendant told them he was present at the time of the robbery, but he denied any participation in it. The officers further testified that as a result of

1. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1174, 12 L.Ed.2d 908, 1 A.L.R.3d 1205.

the search of defendant's car and house they found two coats used in the robbery and a .410 shotgun shell. With the assistance of Rufus McGee, they were shown where the club was thrown out of a car. It was later identified by Mr. Marine. The money bags were also found and identified by Mr. Marine. The coat worn by McGee was found on the floorboard of defendant's vehicle. The coat belonging to defendant and worn by Ardnell Davis was found with a .410 shotgun shell in the pocket. Further, the evidence established that the .22 pistol belonged to the defendant.

The evidence further disclosed that the .410 shotgun came into the possession of the Sheriff's office on February 8, 1970, and that the defendant, Joe Lynn Bell, had the jailer call Deputy McGee, whom he had known for several years, at approximately 12:30 a. m. and tell him he wanted to talk to him. At that time, defendant was being held on a completely unrelated charge. Deputy McGee came to the jail, not knowing what defendant wanted to talk to him about, and this being two days before Ardnell Davis came in and gave her statement concerning the robbery. Defendant, Joe Lynn Bell, advised Deputy McGee that he had a .410 shotgun which he had bought and that he did not know it was against the law to have a gun. Thereafter, Bell took Deputy McGee and other officers to get the shotgun. Defendant objected to the introduction of this exhibit, and the trial court conducted an *in camera* hearing on the question of its admissibility and found that the shotgun was obtained legally and was, therefore, admissible.

The State rested its case, and defendant rested without offering any testimony or defense.

Defendant's first proposition in error urges that the trial court erred in admitting into evidence the testimony of two officers relating an admission of said defendant made while defendant was in custody since there had been no effective waiver of defendant's constitutional rights. With this contention we cannot agree.

The record reflects that the trial court held a full Jackson v. Denno [See Footnote 1] hearing for the purpose of determining whether defendant had been adequately and properly advised of his Miranda rights and to further determine if defendant willingly, knowingly and intelligently waived same. The trial court found, and this Court agrees, that defendant was properly advised of his Miranda rights and that subsequent statements made immediately thereafter by defendant were voluntary and were made with the full knowledge and understanding of his rights. Hart v. State, Okl.Cr., 490 P.2d 1400; and Lambert v. State, Okl.Cr., 471 P.2d 935.

This Court will not disturb the trial court's ruling permitting the introduction of an admission when supported by sufficient evidence that defendant knowingly and intelligently waived his rights and understood the consequences of said waiver. Warren v. State, Okl.Cr., 495 P. 2d 837. In the instant case, defendant, after being advised of his Miranda rights and after acknowledging that he understood each one, signed a written waiver of same which was printed on the bottom of the sheet of paper containing the rights which had been carefully read to him. Defendant argues that the consequences and ramifications of his executing said waiver were not explained to him. However, the execution of a waiver form by a defendant after he has been adequately advised of his rights is not a necessary Miranda requirement. It only lends credence to and supports the trial court's finding of a knowledgeable, willing and intelligent waiver. In the instant case, the finding of the trial court was both correct and proper; and defendant's first proposition in error is without merit.

Defendant next contends that the trial court erred in admitting defendant's above referred to admission since said statement

was made by defendant as a result of a promise and inducement of leniency on the part of said officers.

The pertinent testimony of Deputy Sheriff Warren McGee in response to the question of defense counsel during the Jackson v. Denno [See Footnote 1] hearing is as follows:

"Q. Mr. McGee, this—during the course of Mr. Bell making a statement, I believe you told him that—or Mr. Turner, I believe it was Mr. Turner, made some statement to the effect that if he cooperated with the officers, they would recommend leniency on the part of the Court by the District Attorney, is that right?

"A. I remember it being stated that way. I remember Mr. Turner telling him at one time when Mr. Bell asked him what kind of assurance did he have and I believe he told him he didn't have any, that he couldn't go to his boss and ask for anything without telling him the truth. I believe that's the way it might have been." (Tr. 61).

From the above, it is apparent that defendant had no assurance of leniency. The record as a whole clearly reflects defendant was not induced, cajoled, or tricked into signing a waiver of his Miranda rights or the subsequent permission to search his home and automobile. We, therefore, hold that defendant's second contention is wholly without merit.

Defendant next contends that the trial court erred in admitting into evidence the testimony of Officer McGee wherein McGee related the conversation with defendant concerning the .410 shotgun, said conversation having taken place after defendant had been taken into custody on an unrelated charge and prior to defendant having been advised of his Miranda rights. Defendant also argues that the trial court further erred in admitting into evidence the .410 shotgun.

As set out above, defendant, on February 8, was in jail on a completely unrelated charge. He voluntarily requested the presence of Officer McGee, advised the deputy that he owned a .410 shotgun and authorized the deputy to go to defendant's residence to get same. The record reflects that the deputy refused to go alone, and defendant voluntarily accompanied him to the home, retrieved the gun from a closet, unloaded it and handed same to the deputy. This occurred two days before Miss Davis made her statement and before defendant was in any way suspected of taking part in the Marine robbery.

The Miranda case arose out of an obvious necessity to protect a suspect in a criminal case from the direct or indirect duress or coercion of a police interrogation.

In the instant case, defendant was not yet implicated in the Marine robbery. He voluntarily made his statement without interrogation, took the deputy to his home, found the gun and handed it over. It is arguable that this particular incident even amounts to a search. In any event, this Court holds that defendant voluntarily consented to the deputy taking possession of the shotgun and that both the voluntary statement and the shotgun were properly admitted into evidence. Defendant's third proposition is, therefore, without merit.

Defendant's last contention urges that the trial court erred in admitting into evidence defendant's subsequent signed consent to search. Defendant further argues that the consent was void since defendant was then in custody and a suspect in the Marine robbery and that there had been no effective waiver of his Miranda rights. With this contention we do not agree.

We have heretofore held above that defendant was adequately and properly advised of his Miranda rights, and willingly, knowingly and intelligently waived same.

After being advised of his rights and after making certain admissions, defendant

was then asked if he would consent to the search of his residence. Defendant asked if he had to sign the consent and he was advised that he did not. Defendant then stated that he did not have anything to hide and he would "go on and sign it." The record does, however, reflect that defendant was also advised that if he did not sign the consent a search warrant could be obtained.

Defendant cites Poe v. Oklahoma City, Okl.Cr., 483 P.2d 1190, for the proposition that if an officer advises a suspect that a warrant would be obtained if he did not consent to a search and a consent was then forthcoming, the search was obtained by coercion and therefore void.

In the *Poe* case, the defendant was arrested and removed to an adjacent parking lot. He was informed by the arresting officer that if he did not consent to a search of his automobile it would be impounded and a search warrant issued. Defendant then consented and certain incriminating items were found in the vehicle. This Court held the *Poe* search to be involuntary and coerced due to the threats of impoundment and obtaining a search warrant.

█ The instant case is clearly distinguishable. In the *Poe* case there was a clear and arbitrary display and exercise of authority made immediately by the arresting officer. In the instant case, defendant was in no way cajoled, coerced, or intimidated. He stated he had nothing to hide and voluntarily signed the consent. The trial court so found in its Jackson v. Denno [See Footnote 1] hearing, and we so agree. Therefore, defendant's last contention is also without merit.

Therefore, this Court is compelled to hold that the denial of defendant's application for post-conviction relief should be, and the same is hereby affirmed and defendant is advised that he has exhausted all of his State remedies.

Affirmed.

BUSSEY, J., concurs.