**Charles C. ROBERTS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–73–470.**

Court of Criminal Appeals of Oklahoma.

June 13, 1974.

Don C. Davis, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

Charles C. Roberts, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Comanche County, Case No. CRF–73–124, for the crime of Grand Larceny, After Former Conviction of a Felony; his punishment was fixed at five (5) years imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Ras Kirklen testified that on January 5, 1973, four TV sets, three tape players and several transistor radios were taken from his TV repair shop, without his permission. Upon discovering the missing merchandise he notified the police. Kirklen further testified that Roger Lawrence, an accomplice, had occasionally worked for him in his shop. Lawrence had been in his shop the day before the merchandise was missing. Kirklen suspected that Lawrence might have been involved in the taking of the goods and he confronted Lawrence, telling him he wanted his merchandise returned. Lawrence subsequently went to his room and turned over two of the TV sets and a tape player.

Joe Stamper testified that he was employed by Saveway Oil Company at 2nd and Gore Street in Lawton, Oklahoma on January 5, 1973, and that he was present when the defendant and Roger Lawrence had a conversation concerning the offense.

Roger Lawrence testified how he and the defendant had committed the offense. He further identified States Exhibits No. 1 and No. 2 as being a radio and television set taken from Kirklen's shop.

Jay Vickers testified that he was employed as a police officer for the Lawton Police Department. On February 28, 1973, the defendant, while in custody, signed a waiver of search. The defendant's attorney, at this point, objected to the search and an in camera hearing was held wherein Officer Vickers, the defendant, and Officer Shutts testified regarding the search and whether defendant was timely ad-

vised of his rights; and the admissibility of a confession from the defendant. After the hearing, the Court overruled the defendant's objection to the search and admitted the confession, excluding that portion referring to other crimes. Thereafter, Officer Vickers returned to the stand and identified States Exhibit No. 4 as the search waiver and States Exhibits 1 and 2 as the TV set and radio he recovered at the defendant's residence.

Jack Shutts testified he was employed by the Lawton Police Department as a police officer on February 28, 1973. He introduced States Exhibit 3 as a written waiver of rights form and States Exhibit 5, the defendant's confession. Thereafter, the confession was read to the jury, in pertinent part, as follows (Tr. 84):

"I, Roberts, Charles C., having been advised of my rights under the Fifth Amendment to the Constitution as to compulsory self-incrimination, my right of counsel, and my right to trial, and knowing that anything that I say may be used against me in a court of law, and knowing that I do not have to make any statement at all, do hereby volunteer the following to Detective Jack Shutts, Question, Charles, have you been advised of your rights, and do you understand what your rights are at this time. Answer, Yes. Question, Charles, tell me at this time what you know about the burglary of Ras's TV Shop located at 412 'E' Avenue, this City, on the night of 1–5–73. Answer, On the evening in question, Roger Lawrence came to me and asked me that he had left the back door to the business where he was working unlocked so he could get back into the shop tonight, and wanted me to go with him to the shop to get some stuff, such as TV's and radios. I told him Okay, so we drove to the alleyway behind the shop in my pickup truck, and parked to the rear of the store. Roger opened the door and we went into the shop. On gaining entry to the shop, we got three TV's, two radios, and two stereo tape decks; carried these out and put them in the truck and drove to my house; put this stuff in the garage at my house, and the next day I took all but one TV and one radio, which I still have in my possession at my home—I took the rest of this stuff down to the Saveway Gas Station located at 2nd and Gore Avenue, where I put the stuff into the car of Joe Stamper, which was a black Ford, and later Roger came to the station and picked the stuff up and took it home. . . ."

The defendant did not take the stand, nor offer any evidence in his behalf.

Defendant's first proposition contends that the trial court erred in overruling his Motion to move the trial to another courtroom.

The record reveals that the trial of this case was held in the Federal Building because all of the courtrooms in the Courthouse were being used. From the Federal Courtroom, the scene of the alleged crime could be seen. From a thorough review of the record, we cannot see how anything about the scene of the crime would throw any light on the crime, nor influence the jury's verdict. The defendant does not state how he was prejudiced by reason of the jury being able to see the scene from the courtroom. Therefore, absent a showing of prejudice by the defendant, it is our opinion that this proposition is without merit. See Karr v. State, 54 Okl.Cr. 231, 17 P.2d 992 (1933).

The defendant's second proposition asserts the trial court erred in admitting hearsay evidence. The complained of testimony was given by witness Joe Stamper, who testified that he overheard a conversation between the defendant and Roger Lawrence (an accomplice) in which the defendant and Lawrence discussed committing the crime. Further, Stamper testified that Roger Lawrence, in the presence of the defendant, told him "that they done it." (Tr. 20) The defendant made no comment to the statement.

In the case of Dooley v. State, Okl.Cr., 484 P.2d 1324 (1972), the following appears:

"Michael H. Wolf testified that he had known the defendant for approximately five months; that he saw the defendant on August 18th at the service station where he worked around 3:00 a. m.; that he was accompanied by one Larry Wasson and they came to the station on foot. He had conversations with these individuals and Mr. Wasson made the statement that 'we're going to steal a car and we've got to get out of town because we've already stole three this week.' The witness further testified that Mr. Dooley was present at that time and that he made no response to this statement; . . ."

This Court, in ruling on the admission of the evidence said that where two or more persons have acted in concert in the commission of a crime, the acts and declarations of one co-actor in pursuance of the common act or design are admissible against any other co-actor on trial for the crime. We, therefore, find this proposition to be without merit.

In his third assignment of error, defendant contends that the search of his residence was unlawful, therefore the items that were seized were inadmissible.

The defendant was given his Miranda rights prior to his signing a rights waiver on February 27th, during a pre-arrest interrogation. On February 28th, around noon, he was again given his rights and signed a second rights waiver. Approximately two hours later, while in custody, he signed a waiver of search of his residence.

He bases his contention of illegal search on the fact that although his constitutional rights had been explained to him prior to the arrest, he did not associate a rights waiver with his consent to a warrantless search of his house following the arrest, maintaining that he was never sufficiently apprised of the consequences of his consent.

This Court dealt with a similar argument in Bell v. State, Okl.Cr., 512 P.2d 226 (1973), in which the defendant, prior to arrest, was given his Miranda rights and at that time executed a written waiver of his rights. Subsequently, while in custody, he signed a written consent giving permission to search his car and house. The Court found that the defendant was properly advised of the Miranda rights and that subsequent statements made immediately thereafter were voluntary and were made with full knowledge and understanding of his rights.

Defendant sought to support his contention with Schorr v. State, Okl.Cr., 499 P.2d 450 (1972) which held that Fourth Amendment warnings alone are insufficient to secure a waiver to conduct a search of the premises of a person in custody. However, Schorr v. State, supra, also held that if proper Miranda and Escobedo warnings are given prior to interrogation, and the defendant thereafter voluntarily and without coercion gives permission or consent to search, the same is a constitutionally valid consent.

Further authority for upholding a waiver entered in such circumstances can be found in Lambert v. State, Okl.Cr., 471 P.2d 935 (1970), which held that when evidence is taken outside the hearing of the jury on a Motion to Suppress incriminatory statements made by an accused while in custody, and there is sufficient evidence to support the ruling of the trial court that the defendant had been thoroughly advised of his constitutional rights prior to making any statement, and knowingly and intelligently waived such rights and made incriminating statements, the court's ruling will not be disturbed on appeal. We find this assignment of error also to be without merit.

In his fourth assignment of error, defendant contends that the extrajudicial confession admitted by the trial court was illegally obtained through promises made to him by police officers after he was in custody. He relies on Sholes v. State, 97

Okl.Cr. 158, 260 P.2d 440 (1953), which held that a confession in order to be admissible must be free and voluntary and must not be extracted by any promise or by exercise of any improper influence.

■ In the instant case testimony was introduced in camera holding that police officers may have discussed the possibility of dropping possible charges on other cases if the defendant agreed to make a statement on the current case. From the record at page 73 the following appears:

"Q. At any time did you hint or suggest that there were other charges that might be dismissed if he would clear up —or give a statement and clear up this one?

A. I may have mentioned the mini-bike thing to him, I'm not real certain, but I may have because there was a mini-bike stolen and they came in possession of it.

Q. How do you mean may have mentioned?

A. Well, I may have told him that if he would straighten the thing up or tell us where it came from and what not, why we would just pull that file and throw it in the trash; he wouldn't have to worry about it. I don't know that I did, but I could have, because this is our standard policy."

Although Miller v. State, 13 Okl.Cr. 176, 163 P. 131 (1917) held that a confession induced by promises which hold out hope of benefit or reward is not a voluntary confession and is inadmissible, even if the confession in the instant case was illegally obtained, in view of the overwhelming evidence of guilt in this case, the admission of the confession would merely be cumulative and therefore harmless.

In Breedlove v. State, Okl.Cr., 516 P.2d 553 (1973), this Court held that in view of overwhelming evidence of guilt, the admission of an illegally-obtained confession does not require the setting aside of the conviction. Consequently, we are of the opinion that the evidence presented at trial, aside from the confession, amply supports the verdict of the jury.

For all of the above and foregoing reasons, the judgment and sentence appealed from is accordingly

Affirmed.

BLISS, P. J., and BRETT, J., concur.