Rudolph Pete THOMAS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–432.

Court of Criminal Appeals of Oklahoma.

Feb. 23, 1977.

George R. Robinson, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Eric Warner, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Rudolph Pete Thomas, hereinafter referred to as defendant, was charged, tried

and convicted in the District Court, Comanche County, Case No. CRF–75–431, for the offense of Lewd and Lascivious Conduct with a Minor, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1123. His punishment was fixed at fifty (50) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial Etta Dallas, defendant's sister, testified that on May 16, 1975, defendant lived across the street from her apartment in Lawton, Oklahoma. She returned home at approximately 5:00 p. m. and discovered her daughter, Charlotte, age two, was missing. Charlotte was found by some neighborhood children at approximately 9:30 p. m. She had a black eye, a scar on her arm and her pants were bloody. She was taken to the hospital where she remained for seventeen days.

On cross-examination, she testified that she observed the defendant shortly after 5:00 p. m. and asked him if he had seen Charlotte. Defendant replied that he had not. While looking for Charlotte she went into two vacant apartments in the complex across the street and attempted to enter a third one, but it was locked. She returned the following day to the locked apartment and observed a sheet that had blood on it and blood stains on the wall. She further testified that her eight year old daughter, Carla and her ten year old daughter told her they were in the area when the incident took place. She testified that Carla was also a victim of the incident. Carla stated that a boy about twelve years old did it.

The trial court thereupon conducted an in camera hearing on defendant's Motion to Suppress the introduction of all testimony concerning an alleged confession. Defendant testified that he did not remember signing any rights waiver and that he only answered their questions because he was hit, slapped, kicked and threatened. Testimony of the police officers who were present at the time of the statements, contradicted defendant's testimony. The officers testified that defendant was advised of his *Miranda* rights and signed a written

waiver thereof. They further testified that defendant was not coerced in any manner and that he voluntarily made the statements. At the conclusion of the in camera hearing, the trial court overruled defendant's Motion to Suppress.

The parties stipulated that if Dr. Meek were present he would testify that he examined Charlotte Dallas on May 16, 1975; that she had a torn vagina caused by some foreign object inserted into the vagina.

Detective Don Cunningham testified that he interrogated the defendant at the police department on May 22, 1975, after first advising him of his Miranda rights. Defendant stated that he had an eleventh grade education, understood his rights as they had already been given to him four or five times. After defendant made a statement he was taken to the office of the District Attorney for more detailed interrogation. Defendant was again advised of his constitutional rights and again acknowledged the waiver thereof. Defendant thereupon made a statement implicating himself in the offense. This statement was recorded on a cassette tape recorder. Cunningham testified that he listened to the tape on the day of trial and that there had been no additions or deletions; that the tape was a true and correct representation of the questions propounded to the defendant and the responses given by defendant. Defendant stated that on May 16, 1975, he had been drinking; that he offered a soft drink to a little girl and she followed him upstairs to a vacant apartment; that in the apartment he inserted his finger into the girl's vagina. The girl started to cry and he slapped her. He passed out and when he came to he noticed blood on his finger. He wiped the blood off on a sheet in the room. He left the girl and went back to work about 7:00 p. m. He stated that he saw his sister at about 5:00 p. m. and told her that he had not seen Charlotte that day.

For the defense, Officer Jack Shutts testified that he interrogated defendant at the police department on May 21, 1975. The defendant was advised of his constitutional rights and executed a waiver of rights

form. He testified that defendant voluntarily gave a statement, but that he had been ill prior thereto.

Roberta Thomas, defendant's mother, testified that defendant came to her home on May 16, 1975, at approximately 7:00 p. m. During the time defendant was present in her house, his sister called stating that her child was missing. Defendant called a cab and went to work. She asked the defendant several days later if he was involved in the incident and the defendant stated that he was not and that he was home sleeping the night it happened.

Henry Thomas, defendant's father, testified that he observed the defendant on May 17, 1975, when defendant asked him for a ride. He told defendant that he would ask his mother to give him some money to take a cab to go to work. On cross-examination, he corrected the date to May 16, 1975.

V. R. Stephenson testified that he worked for the ABC Cab Company in Lawton. He received a call to pick up defendant at his father's house some time around 6:00 p. m.; however, he was uncertain as to the day this occurred when questioned on cross-examination.

Etta Dallas was recalled and testified the defendant came to her house on the day in question. They rode the bus together going downtown at approximately 1:00 p. m. She next observed the defendant about 5:00 p. m. leaving his apartment.

In rebuttal, Officer Ronald Ward testified that he had a conversation with the defendant on May 20, 1975 at which time the defendant was advised of his *Miranda* rights and executed a rights waiver form. Defendant stated that he had been working for Woodrow Bates from Thursday evening to Sunday morning and was not near his apartment. Defendant was released after giving the statement.

Defendant first asserts that he was prejudiced by a conversation between a juror and a police officer, which constituted juror misconduct. The record reflects that after the selection of the jury, it was called to the Court's attention that a conversation had ensued between juror Sims and Detective Wells. Defendant testified that he heard Wells tell Sims to "hang in there." The court, thereupon, conducted an in camera hearing concerning the conversation. Juror Sims testified that during the last recess, Detective Wells walked by him and stated, "I see you got picked for the jury." Juror Sims replied, "I sure did, Bill." He did not hear Wells say, "hang in there." He testified that the conversation would not influence his decision and that he could be an impartial juror.

■ We are of the opinion that defendant totally failed to meet the burden to show that he was prejudiced by the conversation between the officer and juror. In *Townley v. State*, Okl.Cr., 355 P.2d 420 (1960), we stated in the second paragraph of the Syllabus:

"Where two members of the jury are seen during recess, in the hall immediately outside the court chambers, briefly speaking with attorney interested in civil aspects of criminal trial, before final submission to jury, does not, in the absence of testimony that occurrence was more than casual, constitute prima facie misconduct of the jury so as to require reversal unless it be shown that defendant was prejudiced thereby."

We, therefore, find this assignment of error to be without merit.

■ The defendant's next assignment of error is that the court erred by allowing repeated testimony about a similar offense at the same time on the eight year old sister of the alleged victim. We need only observe that this testimony was originally elicited by the defendant in the cross-examination of Etta Dallas. In *Carson v. State*, Okl.Cr., 529 P.2d 499 (1974), we cited with approval *Radney v. State*, 36 Okl.Cr. 240, 253 P. 913 (1927), as follows:

" 'The rule is well settled that, ordinarily, a party may not complain of an error which he himself has invited, or which he has waived, either expressly or impliedly. This rule clearly applies to a case where one party resorts to incompetent evidence without objections, and where the oppo-

site party replies with evidence of the same character. In such case, both are at fault and neither can complain in this court of the admission or exclusion of the evidence by the court below. . . . ' "

██ Defendant contends in the third, fourth and fifth assignments of error that the trial court erred in failing to sustain his objection to the admission of the confession. We must disagree. The record reflects that the trial court properly conducted an in camera hearing as to the admissibility of the confession. Defendant testified that he was threatened, beaten and coerced prior to making the statement. The testimony of Detective Cunningham and Officer Shutts directly contradicted defendant's testimony. They testified that the defendant was advised of his constitutional rights and affirmatively waived them. They further testified that the defendant was not physically abused or threatened. The tape recording was played during the in camera hearing and defendant stated, "I've been advised of my rights, and no coercion of any kind has been used against me." We have previously held that this Court will not disturb the trial court's ruling permitting the introduction of a confession when the same is supported by sufficient evidence that defendant waived his constitutional rights. See, *Warren v. State,* Okl.Cr., 495 P.2d 837. We further observe that the question of the voluntariness of the confession was submitted to the jury under proper instruction. We, therefore, find these assignments of error to be without merit.

██ Defendant next contends that the trial court erred in allowing evidence about a blood-stained sheet which was never introduced into evidence. We must again disagree. The record clearly reflects that the first testimony concerning the sheet was adduced by defendant during cross-examination of Etta Dallas. For the reasons stated in *Carson v. State,* supra, we are of the opinion that this assignment of error is improperly before us.

██ Defendant asserts four additional assignments of error, none of which are supported by citations of authority. We

have repeatedly held that it is necessary for counsel for appellant not only to assert error, but to support his contentions by both argument and citations of authority. When this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this Court will not search the books for authorities to support a mere assertion that the trial court erred. See, *Sandefur v. State,* Okl.Cr., 461 P.2d 954 (1969). We have carefully examined each of the remaining assignments of error and find that defendant was not deprived of his fundamental rights.

In conclusion, we observe the record is free of any error which would require reversal or justify modification. Under such circumstances, the judgment and sentence is accordingly *AFFIRMED.*

BLISS, J., concurs.

BRETT, J., concurs in results.