Kenneth CLEVELAND, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. O-77-22.

Court of Criminal Appeals of Oklahoma.

June 28, 1977.

Bob Ward, Guthrie, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., James W. McCann, Legal Intern, for appellee.

OPINION

BUSSEY, Presiding Judge:

Appellant, Kenneth Cleveland, hereinafter referred to as defendant, was charged in the District Court, Logan County, Case No. CRF–75–39, with the crime of Burglary, Second Degree, in violation of 21 O.S. 1971, § 1435. The defendant entered a plea of guilty, which was accepted by the court. Imposition of sentence was deferred until the fourth Friday of June, 1977, and the defendant was placed on probation under the supervision of the Department of Corrections of the State of Oklahoma and paroled to the local parole officers of the District Court, Logan County until sentencing. The defendant was then released on

his own recognizance. Subsequent to the release, the State of Oklahoma filed an application to accelerate sentencing alleging that the defendant, in a separate transaction subsequent to his release, committed a burglary, second degree, in violation of Rule 1 of the terms and conditions of probation, that defendant is not to violate any laws, City, State, or Federal. On August 13, 1976, the deferred sentence was accelerated and defendant was sentenced to three (3) years in the Oklahoma State Penitentiary, with the last two (2) years suspended with probation pursuant to 22 O.S.1971, § 991c. From said judgment and sentence a timely appeal has been perfected to this Court.

The testimony at the hearing on State's motion to accelerate sentencing shows that on May 25, 1976, the defendant was a tenant in a house owned by one Verbenia Jefferson in Guthrie, Oklahoma. On May 25, 1976, Jefferson contacted the Guthrie Police Department complaining that a recreation center which she owned and operated, the Ghetto Lounge, had been broken into. The coin boxes on all of the game tables had been forced opened, some of the tables had been destroyed, and food had been stolen from the premises. Jefferson testified that the defendant had for three months been a tenant in her house which occupies the same building as the recreation center. At approximately 3:30 a. m., on May 25, 1976, Jefferson approached the defendant in his rented room and ordered him to leave due to defendant's alleged failure to pay rent. Jefferson testified that the break-in occurred on that morning subsequent to her confrontation with defendant.

Major Henry Cotton of the Guthrie Police Department testified that he had investigated a reported break-in at the Ghetto Lounge on May 25, 1976. The investigation revealed that entry to the building had apparently been gained through a bathroom window on the side of the building. A screen which had been pulled from the window was found on the ground behind the building; a footprint of a tennis shoe appeared on the screen. Cotton observed that all of the machines on the premises had been broken into.

At approximately 5:10 p. m. that evening, defendant voluntarily came into the Guthrie Police Department where he was taken into custody. Sergeant Daryl Morang testified that he read defendant his Miranda rights from a card and then asked the defendant if he understood them. Defendant replied that he did. At this point, defendant signed a Waiver of Rights statement in Morang's presence. Morang did not question defendant. A few minutes later, Cotton read defendant his Miranda rights and asked him if he understood those rights. Defendant replied that he did, and Cotton commenced the interrogation.

Cotton testified that during the course of the questioning he produced the screen with the shoe print on it from the scene of the break-in, and upon comparing it with the defendant's tennis shoe concluded that the prints matched. Cotton also observed and then confronted the defendant with the fact that his [defendant's] tennis shoe matched the plaster cast of a print made at another burglary. At this point, defendant executed a handwritten statement, the pertinent portion is as follows:

"The night of the break-in I lifted the screen out of the window then went to my old ladies. Kenneth and I both needed some money but I didn't need it that bad. Well after I got back from my old ladies house Kenneth was outside waitin' for me then we went in the house."

Over defense counsel's objection, defendant's handwritten statement was admitted into evidence by the trial court.

Defendant testified that he made the statement only because Cotton threatened to prosecute him for several crimes which he had not committed, and furthermore Cotton knew who had committed the other crimes but chose not to proceed against that person because he was a juvenile. Defendant further testified that Cotton had never read him his rights and that the other officer had only read him "half" of his rights. On cross-examination, defendant admitted, however, that the statement had been made

in his own words and that Cotton had not told him what to write.

■ Defendant, in his first assignment of error, asserts that he was "mentally coerced" into making a statement against interest and that such statement should not have been admitted into evidence. Inculpatory statements, to be admissible, must have been voluntarily made, and are subject to the same rules of admissibility as confessions. *Brown v. State,* Okl.Cr., 384 P.2d 54 (1963). In the case at bar, the trial court determined that defendant's statement was made voluntarily. This Court will not disturb a trial court's ruling permitting the introduction of a confession when supported by sufficient evidence that the defendant knowingly and intelligently waived his rights and understood the consequences of said waiver. *Lambert v. State,* Okl.Cr., 471 P.2d 935 (1970). Cf. *Warren v. State,* Okl. Cr., 495 P.2d 837 (1972); *Castleberry v. State,* Okl.Cr., 522 P.2d 257 (1974). The defendant's contention does not take into account the testimony of the two Guthrie police officers that the defendant was informed of his constitutional rights twice between the time he arrived at the police station and the time he made the inculpatory statement, and that the defendant indicated on both occasions that he understood these rights. It likewise does not take into account the testimony of the officers that no threats of any kind were made to the defendant in securing the admission. Although the testimony of defendant conflicts with that of the officers, there is ample evidence in the record to support the trial court's ruling on the admissibility of the statement; the ruling will not be disturbed on appeal.

■ The defendant's second assignment of error is that the prosecution failed to establish beyond a reasonable doubt that the defendant participated in the May 25, 1976, burglary. We need not determine whether the State met that standard; the proceeding from which the defendant appeals is a hearing on the State's application to accelerate sentencing. The defendant was not on trial for the subsequent burgla-

ry, and consequently, the State's burden was not to establish beyond a reasonable doubt that the defendant committed such burglary. The State's burden was to show by a preponderance of the evidence that the defendant violated the conditions of deferred sentence. *Frick v. State,* Okl.Cr., 509 P.2d 135 (1973). Cf. *Barthiume v. State,* Okl.Cr., 549 P.2d 366 (1976).

In *Frick,* supra, we held that after a defendant's assurances of due process are met, i. e. notice, hearing, right to counsel and the right to confront accusers, acceleration is left to the discretion of the trial court after hearing all the evidence:

"... The determination of the issue of a violation of probation must be left to the trial court, and said court's order of acceleration will not be reversed by this Court unless there is an abuse of discretion reflected in the record. ..."

In this case, the record contains competent evidence to support the trial court's determination that the defendant violated 21 O.S.1971, § 1435 in violation of Rule 1 of the terms and conditions of probation. The record reveals no evidence that the trial court abused its discretion in accelerating the imposition of judgment and sentence and its determination will not be disturbed by this Court.

The judgment and sentence is *AFFIRMED.*

BRETT, J., concurs.