Larry Dale DAVIS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–372.

Court of Criminal Appeals of Oklahoma.

Feb. 5, 1982.

C. Michael Zacharias, Claremore, for appellant.

Jan Eric Cartwright, Atty. Gen., Kay Harley Jacobs, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant was convicted in Rogers County District Court Case No. CRF-79-207 of Robbery with a Dangerous Weapon, After Former Conviction of a Felony, and sentenced to fifteen (15) years' imprisonment.

On June 25, 1979, Patricia Pulliam was working as a cashier at a convenience store in Claremore, Oklahoma, when a man wearing a jacket, hat and sunglasses came into the store. He pointed a gun at her and demanded the money in both the cash register and her purse. After she complied with these demands, he ordered her to drive him in her car to a pickup parked on the side of the 7–11 building. He took some clothes out of the pickup, ordered her out of the car and left the scene in her car.

On June 29, 1981, Officer Dowden and two other men went to Mr. Jack Dick's grandmother's home. They were looking for Mr. Dick and Mr. Davis, the appellant, as they considered them to be suspects in the robbery. When the two suspects came outside, they were asked to accompany the officers to the police station but were told they were not under arrest. The men agreed to go with the officers. They were

questioned at the Claremore Police Station for approximately two hours.

Mr. Dick testified that while he was at the police station he was not constantly guarded by police officers. Officer Dowden testified that Mr. Dick and the appellant had been read their rights twice. The appellant, however, declined to sign a rights waiver form.

A search of the Dick's residence produced a jacket matching the one described by the 7–11 cashier. In the jacket pockets was a pair of sunglasses and a bottle of makeup. A hat, on which makeup stains were found was also discovered rolled up inside of the jacket.

### I.

The appellant first contends that although the words, "You are under arrest," were not spoken to him until after the lineup, he was in fact under arrest prior to the lineup. Consequently, he contends his arrest was illegal for lack of probable cause. In *Scott v. State*, 617 P.2d 240 (Okl.Cr.1980), this Court adopted the following definition of arrest:

> [T]he taking, seizing, or detaining the person of another either by touching, or by any act which indicates an intention to take him into custody and subject the person arrested to the actual control and will of the person making the arrest, or any deprivation of the liberty of one person by another or any detention of him, for however short a time, without his consent, and against his will, whether it was by actual violence, threats, or otherwise . . . .

■ Therefore, if a person voluntarily cooperates with the police and is free to leave, he is not under arrest. On the other hand, a person who is involuntarily taken to the police station, subjected to interrogation and is not free to leave is under arrest whether or not the words, "You are under arrest," are spoken to him. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Accordingly, the requirement of probable cause must be met prior to such an involuntary detention.

■ In the instant case, the trial court ruled in response to a motion to suppress the lineup that the appellant had voluntarily accompanied the officers to the police station and participated in the lineup on a voluntary basis. After studying the entire record, we find that although the evidence is susceptible to conflicting interpretations, there was sufficient evidence at the preliminary hearing and the motion hearing to support the trial court's determination of voluntariness. The appellant's contention that he was under arrest illegally prior to the lineup therefore is found to be without merit.

### II.

■ Next the appellant contends that the search of the Dick's residence was illegal as the officers allegedly lacked probable cause to conduct the search and had illegally obtained the consent to search from Mr. Dick. The appellant first bases his contention on the fact that the officers had told Mr. Dick that if he didn't consent, a search warrant would be issued. Such a statement alone does not in and of itself negate the voluntariness of the consent. *Bell v. State*, 512 P.2d 226 (Okl.Cr.1973). Voluntariness is a question of fact to be determined from the totality of circumstances. *Holmes v. State*, 568 P.2d 317 (Okl.Cr.1977).

■ In a case such as this, where the consent is obtained after lengthy questioning by the police, however, there must be clear testimony that the consent was indeed voluntary. At trial, Mr. Dick clearly and positively testified that he had given his consent freely and voluntarily. A review of the evidence supports his testimony.

As Mr. Dick voluntarily consented to his residence being searched, the appellant's contention the search was improper as the officers lacked probable cause is without merit. It is well settled that one of the exceptions to the requirement for probable cause before a search may be conducted is when a search is conducted pursuant to voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

The appellant also contends that the consent was a "fruit of an illegal arrest" and thus should have been suppressed. As Mr. Dick was not arrested, either in fact or formally, this contention is without merit.

### III.

■ The appellant next attacks an in-court identification of him on the basis of the victim's unreliable memory and the taint resulting from an impermissibly suggestive lineup. First, this Court finds that the lower court correctly ruled that the lineup was properly conducted and was not impermissibly suggestive. This ruling was made by the lower court after it had personally interviewed all of the participants in the lineup during an in-camera hearing. Keeping in mind that the appellant was not under arrest when he participated in the lineup, this Court finds the lineup was conducted in substantial compliance with *Thompson v. State*, 438 P.2d 287 (Okl.Cr. 1968). *Lee v. State*, 600 P.2d 344 (Okl.Cr. 1979).

As the lineup was properly conducted, the contention that the lineup tainted the in-court identification is without merit. This Court reiterates its recommendation to trial courts, however, which it made in *Thompson v. State*, supra, to conduct an in-camera hearing with the identifier whenever the procedure of a lineup is brought into issue in order to determine if the identifier can make an in-court identification independent of the lineup experience.

■ As to the reliability of the in-court identification, this is an issue which must be tested on the basis of the totality of the circumstances surrounding the identifier's opportunity to view the accused during the crime and in light of the subsequent identifications and descriptions made by the identifier. *Hays v. State*, 617 P.2d 223 (Okl.Cr. 1980). In the instant case, the reliability of the in-court identification is sufficiently established. It, therefore, was properly allowed into evidence and the appellant's contention to the contrary is without merit.

### IV.

■ The appellant contends reversible error occurred when the police officer testified as to what the cashier said at the lineup. In *Godwin v. State*, 625 P.2d 1262 (Okl.Cr.1981), we reiterated the rule that although an eyewitness can testify at trial to an extra-judicial identification, this testimony can only come from the eyewitness, not by an officer or any other third party who was present at the time of the extra-judicial identification. Further, we stated that the appellant's failure to object to the admission of such testimony by an officer constitutes a waiver of the objection on appeal. In the instant case, no objection was made. Additionally, the officer's testimony came during the preliminary hearing where it was merely cumulative evidence. Thus no prejudice can be shown and this assignment of error is without merit.

### V.

The appellant next argues that this case should have been dismissed prior to trial when it became apparent that the State was not going to be able to rely at trial on fingerprint evidence which it had presented during the preliminary hearing. He contends that this rendered the evidence against him insufficient to bind him over for trial.

■ The State has the burden at preliminary hearing to present evidence which shows a crime has been committed and that there is probable cause to believe the accused is the one who committed that crime. *State v. Ogle*, 602 P.2d 213 (Okl.Cr.1979). The evidence at preliminary hearing need not be sufficient to convict at trial. *Little v. State*, 627 P.2d 445 (Okl.Cr.1981).

■ In the instant case, a review of the preliminary hearing transcript reveals that even without the fingerprint evidence, the State had met its burden. In light of this, the trial court properly overruled the appellant's motion to dismiss and this assignment of error is without merit.

## VI.

 In Proposition V of the appellant's brief, a bald allegation is made that the trial judge exhibited prejudice against the appellant by transferring him from the Rogers County jail to the Mayes County jail. The appellant submits that although the bias exhibited by this may not be significant, it did work a hardship on trial preparation. He does not claim prejudice resulted from this move, which was made as a result of a disruption in the Rogers County jail. Appeal is the process through which grievances of the appellant concerning his right to a fair trial may be reviewed. It is not the channel through which attorneys air their grievances about procedures which concededly inconvenienced them but did not prejudice their clients.

## VII.

The appellant contends that the trial court erred when it refused to give all of the appellant's requested instructions. This Court has repeatedly held that it is not error to refuse requested instructions when they are substantially covered by the court's instructions. What is important is that the instructions, when considered as a whole, state the applicable law fairly and accurately. *McFatridge v. State*, 632 P.2d 1226 (Okl.Cr.1981).

 In the instant case a review of the trial court's instructions reveals that they substantially covered the appellant's requested instructions and presented the applicable law in a fair and accurate manner.

 Additionally, it is argued that the second stage instructions were insufficient although the appellant did not submit written requested instructions. The failure to offer instructions on a specific point of law acts as a waiver of the right to appeal on the failure of the trial court to offer instructions on that point, except in the case of fundamental error. *Driver v. State*, 634 P.2d 760 (Okl.Cr.1981). This was not fundamental.

## VIII.

 Moving to the next assignment of error, it is contended the prosecutor erred in making certain statements during his closing argument in both the first and second stages of the bifurcated trial. The questioned statement during the first stage of closing argument was a conclusory statement of the prosecutors, which the jury was admonished to disregard. We find that any error was cured by that admonition.

 During the second stage of the trial, the prosecutor made several statements to which the appellant objected. One such statement does have the appearance of indicating to the jury society's expectations of severe punishment. While the statement was improper, under the circumstances of this case, we are of the opinion that such statement is not sufficient to cause either a modification or reversal of this conviction. For the crime proved, the sentence imposed on appellant is not excessive.

## IX.

The appellant in his final assignment of error contends the accumulation of error warrants reversal. In light of the above reasoning, this Court finds this contention to be without merit. Accordingly, the judgment and sentence is affirmed.

BUSSEY and CORNISH, JJ., concur.