**Carol Marie MOORE and Robert Edward Greene, Appellants,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–805.**

Court of Criminal Appeals of Oklahoma.

Aug. 2, 1976.

Robert S. Durbin, Deputy Chief Public Defender, William R. Edmison, Legal Intern, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

OPINION

BLISS, Judge:

The Appellants, Carol Marie Moore and Robert Edward Greene, hereinafter referred to as defendants, were charged jointly, tried before a jury and convicted of the crime of Larceny of Merchandise From a Retailer in the District Court of Tulsa County, Case No. CRF–75–417. Punishment was assessed against each defendant by the jury at a term of one (1) year in the custody and control of the Department of Corrections of the State of Oklahoma. A one (1) year suspended sentence was then rendered against each defendant by the trial court. From said judgments and sentences the defendants have perfected their timely appeal.

Briefly stated, the evidence adduced at trial is as follows, to-wit: For the State, Bob Gaines then testified that on the 21st day of February, 1975, he was employed as a security guard at Target, a discount store situated in Tulsa. At approximately 9:20 P.M. he observed the defendants looking at some can openers. As defendant Greene was looking around, defendant Moore took a can opener from a shelf and handed it to him and Greene placed it under his large parka type coat. Gaines then observed from approximately 10 to 15 feet away the defendant Greene take a hair dryer from a shelf, remove the price tags and place the dryer under his coat and under his arm. The defendants were then joined by a teenage girl and proceeded to the houseware department where they placed some glasses in a shopping cart. The girl then left the store with two children. The defendants then proceeded to the cosmetics department where defendant Moore took a bottle of shampoo and another item from a shelf and handed them to defendant Greene, who placed them in his coat. The defendants then proceeded to the checkout counter where they paid for the glasses and they started to leave the store. The witness then approached the

defendants, placed them under arrest and escorted them to the security office. Once inside, defendant Greene threw the can opener, hair dryer and shampoo on the floor and started to leave the office saying "I don't have anything that belongs to you, I'm leaving." He took a step toward the door and the witness pushed him back and shut the door. A weapon search was then made and a struggle ensued, Greene was subdued and handcuffed and the police were called. The items allegedly taken were subsequently admitted into evidence. Gaines further testified as to the price of each item, the total being more than $20.00. Neither defendant made any offer to pay for the items on the evening in question.

On cross-examination it was established that the witness had been employed at Target "off and on for the past three years". He further stated that the jacket worn by the defendant Greene did not have any special straps or pockets sewn into the interior and that it was impossible to tell that Greene had anything under his jacket. The witness further stated that the defendant walked approximately 50 feet holding the items under his coat, that the girl seen earlier with the defendants was not with them when they approached the checkout counter, that he did not know who paid for the items, that he took Greene by the upper left arm and directed him towards the security office, that he had not been in the office for about an hour, and that there were other items of merchandise in the office. The State then rested.

The defense first called Jim Huth, merchandise manager for Target, who testified as to the cash register system used by Target stores. It was then stipulated that the defendant Greene had $74.52 in cash on his person at the time he was taken into custody by the Tulsa Police Department.

The defense then called Miss Terry Barlew who testified that she was 15 years old on the date in question, was the sister of the defendant Moore and was living with her, the defendant Greene and defendant Moore's two children. She further testified that on the date in question she accompanied her sister, the children and Greene to the Target store where they went to the houseware department to look at some plates. Miss Barlew was pushing the shopping cart for the group and at no time was the group separated. While a sales person was looking for a specific type of plate, defendant Greene examined a hair dryer. The hair dryer was a large item designed to fit down over a person's head and, in fun, he turned the hair dryer on and placed it over his head. When the sales person returned without the particular plates the entire group proceeded to look for some glasses. They then went to the checkout stand and the witness took the children to the car. She had been waiting in the car about 15 minutes when a man approached, gave her the keys, and stated that her friends were going to jail for shoplifting.

The defendant, Carol Moore then took the stand testifying to essentially the same facts as her sister. After the sister left with the children the defendants went to the checkout stand, paid for the glasses, and were walking out of the store when they were arrested by Gaines. She stated that Gaines took Greene's arm and put it behind his back and began to push him towards the back of the store. When they reached the back Greene was pushed through the door at which time a scuffle occurred and Gaines grabbed Greene and threw him about the room. During the course of the struggle a great many items were disarranged and several items contained on a shelf and table within the back room fell to the floor and on a desk. She then listed an electric knife, a hair dryer, a can opener and numerous bottles, such as those claimed to have been stolen, as present in the room and disarrayed by the scuffle. She further stated that she was innocent of the crime and had no prior criminal convictions. On cross-examination the witness related that she protested her innocence to all of the law enforce-

ment personnel with whom she came in contact and that none of them would listen to her.

The final defense witness was the defendant Robert Edward Greene who, testifying in his own behalf, stated essentially the same facts as defendant Moore and her sister. He then identified a goosedown cowboy jacket which he was wearing on the evening in question and stated that at no time was the group separated in the store and that they went to Target for the purpose of buying some plates and glasses. He was leaving the checkout stand with the glasses when Gaines came up from behind, grabbed his left arm and announced he was under arrest. He further stated that during the struggle in the back room numerous items already in the room were strewn about the interior. The defendant then demonstrated to the jury the manner in which he wore his jacket on the night in question and tried to demonstrate to the jury how Gaines described his placement of the stolen items under the jacket and his subsequent actions. On cross-examination defendant Greene stated that Gaines was a liar and that none of what Gaines testified to was accurate. The defense then rested.

■ The defendants' first assignment of error urges that the trial court committed reversible error in allowing improper comment and questioning by the prosecutor during the course of the trial. The defendants' first complaint arises out of certain questions asked of defendant Greene concerning whether or not he protested his innocence to others, including law enforcement officers, during and subsequent to his arrest. However, an examination of the record reveals that defense counsel in his opening statement commented that the defendants had protested their innocence from the very beginning, that defense counsel in closing argument referred to the fact that both defendants had protested their innocence, and that defense counsel failed to object to all such questions except the last. The last question was objected to,

the objection sustained by the trial court and the question went unanswered. It is therefore apparent that the error, if any, was invited by defense counsel and was not prejudicial, since a material part of the defense was that the defendants were innocent and acted so from the very beginning and defendant Greene's answers to the questions all revealed that he did in fact protest his innocence. Since the error was invited and no prejudice to defendants occurred the defendants' argument is meritless.

■ The defendants' next complaint of a certain comment made by the prosecutor during cross-examination of defendant Greene which defense counsel states is a comment concerning the prosecutor's personal opinion as to the accuseds' credibility. The comments complained of appear in the record as follows, to-wit:

"MR. MANNER: If Your Honor please, let me make my objection. Mr. Truster is deliberately badgering the witness.

"MR. TRUSTER: No, Your Honor, I'm trying to save what responses are truthful from this witness.

"MR. MANNER: Excuse me, Your Honor. May I be permitted to make an objection?

"THE COURT: Yes.

"MR. MANNER: Thank you. Mr. Truster is deliberately badgering the witness. He knows of the witness's strong feelings about this.

"MR. TRUSTER: Your Honor, I'm going to object. That answer called for a yes or no. If he can't tell it like it is, let him get off of the stand."

The comments by Mr. Truster, the prosecuting attorney, are not a reflection of his unsupported opinion of the defendants' credibility but only show his frustration with the defendant's failure to answer questions "yes or no". This is apparent from the following comment made by the trial court.

"THE COURT: I don't believe Mr. Truster is badgering the witness. The

witness is losing his temper, and not responding to Mr. Truster's questions. If he would just listen to the question and answer the question as it is asked, I think he would get along a lot better."

■ The defendants next complain of a comment made during the prosecutor's closing argument which the defense urges was an unsupported accusation that the defense witnesses were lying. Again, we disagree. The comment complained of is as follows, to-wit:

". . . There is nothing in the Court's instructions, or the law that says to you because one witness comes forth, and testifies that you must disregard that witness's testimony. Counsel would have you believe, from his argument, that there is something the matter with one witness, that the state would have drug up other people to bring in here.

There is one thing I want you to remember, as long as Mr. Fallis is running that office, as long as I work for that man in this office in which I represent the State of Oklahoma, there will be no evidence ever manufactured just for the sake of telling the jury something more might be represented. That is a bunch of malarky. That is not telling it like it is. That's darned downright lying. That's not how evidence is presented. You present those witnesses to a jury, after you have scrutinized the case for the law and the evidence, and see whether it meets the standard of credibility, and then put a witness on the stand.

Counsel would have you believe there is something wrong with one witness. Don't be hoodwinked with that argument. . . ."

It is obvious that the comment was nothing more than a response to defense counsel's argument that the State presented only one witness.

■ The defense next cites another comment made by the prosecutor which it contends was an unsupported attack upon the credibility of the defense testimony. The comment is as follows, to-wit:

". . . He said falsely arrested, falsely accused, and falsely tried. I have had an occasion to be in this courthouse for two years now, and I submit to you ladies and gentlemen that you don't stand, from the State's standpoint, before a jury, and ask them to return a conviction if it is not warranted from the evidence presented, and there are many, many safeguards that are built in in that fashion, and in that regard all of which make up a part of the system—a system that is now under a great deal of criticism, but ladies and gentlemen, again, I pledge to you as long as my boss and I stand before a jury, it doesn't happen. No way."

Again, it is apparent that the comment is in response to a remark made by defense counsel during his closing argument inferring that the defendant was falsely arrested, falsely accused and falsely tried. No other interpretation can be reasonably made.

■ The last complaint made by the defense is with reference to another comment made by prosecutor during his closing argument, said remarks being as follows, to-wit:

". . . I would submit to you that the nature of the crime, and the defendants' lack of criminal background are certainly things to be considered, but so should the consideration be of taking the stand under oath to God and telling a story. I submit to you those are facts to be considered in your sentence . . . ."

Again, it is apparent that the comment does not indicate the unsupported personal opinion of the prosecutor concerning the defendants' credibility but is in response to the defendants' argument that neither had a prior criminal conviction. The comment concerning the oath is apparently a refer-

ence to the fact that the State's only witness would not take his oath lightly. The defendants' first assignment of error is without merit.

■ The defendants' second assignment of error urges that the trial court erred in refusing to allow defense counsel to cross-examine the State's sole witness concerning his being a "special deputy of Tulsa County" thereby depriving the defendants of important impeachment testimony going directly to the credibility of said witness. In support of their contention the defendants argue that the credibility of a State's witness is enhanced in the eyes of the jury if he is a law enforcement officer and that the defendants had a right to impeach the testimony of Mr. Gaines concerning his being a "special deputy of Tulsa County" in order to attack the credibility in general.

The record reveals that Gaines testified that when defendant Greene attempted to leave the back room after dropping the items from under his coat, he advised Greene that he was a commissioned deputy from Tulsa County and that Greene was under arrest. On cross-examination, when defense counsel attempted to cross-examine Gaines concerning his commission as a deputy, the trial court sustained an objection by the State as to the materiality of the questioning and refused defense counsel's offer of proof that Gaines was in fact not a commissioned deputy but only the possessor of a card and small badge handed out by the Tulsa County Sheriff at election time. We agree with the defense that the ruling of the trial court constituted error.

However, we do not believe that the error prejudices the rights of the defendants in this case for the reason that there was sufficient evidence from which the jury could find the defendants guilty as charged and the defendants received the minimum punishment provided by law. *Smith v. State*, Okl.Cr., 519 P.2d 1370. Since the failure of the trial court to allow continuing cross-examination concerning the commission manifested no prejudice to defendants, it was only harmless error. See *Chiles v. State*, Okl.Cr., 508 P.2d 1108. The defendants' second assignment of error is without merit.

■ The defendants' last assignment of error urges that the trial court erred by denying the defendants' motion for a new trial on the grounds that the evidence produced by the prosecution was so weak and uncertain that it could not have been sufficient to sustain the conviction. Again we disagree. This Court has repeatedly held that where there is competent evidence in the record from which the jury could reasonably conclude that a defendant was guilty as charged, this Court will not interfere with that determination upon the grounds that the evidence is insufficient. See *Tilley v. State*, Okl.Cr., 511 P.2d 586. This is true even though the evidence is conflicting as in the instant case.

It is therefore the opinion of this Court that the defendants received a fair and impartial trial before a jury, that no material right of either defendant was prejudiced and that the judgments and sentences appealed from should be and they are hereby AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.