**Roy W. SAM, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–74–158.**

Court of Criminal Appeals of Oklahoma.

May 31, 1974.

Edward Goldman, Oklahoma City, and Robert Marc Goldman, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Stan Chatman, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Roy W. Sam, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–73–1376, for the crime of Assault and Battery with a Dangerous Weapon with Intent to Kill. The jury assessed his punishment at six (6) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

We will first present a chronological review of the facts. After getting off work on the afternoon of May 10, 1973, defendant drank a few beers with two friends, Vauder and Overturf. After supper they went bar-hopping and drank several more beers. Sometime after midnight, defendant left a bar to drive Overturf to his home. About this time the prosecutrix, Mrs. Barbara Sams (no relation to defendant), left her home a few blocks from Overturf's enroute to the grocery store. She experienced car trouble, and stopped in the street near Overturf's home. She spent several minutes trying to start her car without success, when some of her neighbors drove by, stopped, and gave her a ride home. There she borrowed her daughter's car and drove back to where she had left her own car. She arrived there as defendant was dropping off Overturf. The time was around 12:30–1:00 a. m. As defendant was backing out of Overturf's driveway, he noticed Mrs. Sams trying to start her car and offered to help. With his other friend, Vauder, waiting in the car, defendant and Mrs. Sams spent a few minutes in an unsuccessful attempt to start her car. After deciding that the car was out of gas, Mrs. Sams declined defendant's offer to drive her to a gas station. She got into her daughter's car and proceeded to the gas station and grocery. Defendant got into his car and took Vauder home. During this first encounter, Mrs. Sams testified that defendant was polite and helpful, and never tried to molest her or steal anything from her. The defendant took Vauder home and returned to the scene of the above first encounter, arriving there shortly before Mrs. Sams returned. He parked his car down the block near a construction site and walked to a tree in a yard in back of Mrs. Sams' car, behind which he waited. When Mrs. Sams returned, shortly thereafter, she parked her daughter's car and began pouring gas into her car from a can which she had obtained at the filling station. At that point defendant came out from behind the tree and walked up behind Mrs. Sams. She testified that she turned and saw defendant with his arm upraised

just before he began beating her about the head with a piece of lead pipe. She screamed, "He's trying to kill me" and ran into a neighboring yard, with defendant in pursuit, beating her all the while. She was finally knocked down and defendant fell upon her, choking and beating her. At that point a Mr. Meyers, who had witnessed all of· the above events from his home across the street, came running with his shotgun, fired it into the air, and ordered defendant to desist. Defendant hit Mrs. Sams again with the pipe before jumping up and running to his car. Mr. Meyer fired at defendant, striking him in the buttock with shotgun pellets. Defendant then drove off, only to be apprehended a few days later. The extent of Mrs. Sams' injuries were such that numerous stitches were taken in her head, and she was also treated for a mashed finger.

At the trial, defendant was positively identified by Mrs. Sams and Mr. Meyer. Several police officers testified that defendant had admitted to them that he was Mrs. Sams' assailant. Defendant mildly disputed the officers' testimony, but did not deny that he had attacked Mrs. Sams. He agreed with the State's version of his activities on the night in question up to the period between his two encounters with Mrs. Sams. Defendant stated that he could not remember anything which had occurred during that time, and could remember hitting Mrs. Sams only vaguely. The first thing he clearly recalled was Mr. Meyers yelling and shooting at him.

In his first assignment of error, defendant alleges error in the admission of rebuttal testimony given by police officer Larry Larimore after the defense had rested its case. Officer Larimore had previously testified, as part of the State's case in chief, as to a meeting with the defendant three days after the crime at police headquarters. His first appearance on the stand was limited to a description of the buckshot wounds on defendant's buttock, which he had observed at that meeting. After the defense had rested its case, he was recalled to testify in rebuttal. He stated that at the same meeting, defendant had told him that his motivation for returning to the scene the second time was to have sexual intercourse with Mrs. Sams. At that point, defense counsel objected and moved for a mistrial. His argument was that as there had previously been no mention of sexual motive, Larimore's testimony was an improper injection of original evidence in rebuttal which should have been introduced on direct. Defendant's motion was overruled, as were later objections when made each time the prosecutor mentioned the possibility of a sexual motive behind the assault.

■ The same objection is before us on appeal. Defendant admits that the admission of original evidence in rebuttal is not reversible error where not prejudicial to the accused. Johnson v. State, 21 Okl.Cr. 17, 204 P. 311 (1922). But, he argues, the injection of the highly inflammatory issue of sex into an assault and battery trial, on rebuttal, was so fundamentally prejudicial that it constituted an abuse of the trial court's discretion to allow original issues to be admitted on rebuttal. Hicks v. State, Okl.Cr., 503 P.2d 243 (1972).

■ We disagree. First, we note that prior to Officer Larimore's rebuttal testimony, the only explanation given at trial for defendant's return to the scene was that given by defendant. He testified that he had a memory lapse as to events between the time he took Vauder home to the time he was chased away from the scene by Mr. Meyers. He "vaguely" remembers hitting Mrs. Sams. In our opinion, Larimore's rebuttal testimony had the effect of supplying an explanation for defendant's return to the scene, and was in direct contradiction of defendant's claim of a memory lapse. This was within the definition of proper rebuttal which we laid down in Clark v. State, Okl.Cr., 370 P.2d 46 (1962), cited with approval in Dickerson v. State, Okl.Cr., 422 P.2d 213 (1966), which is as follows:

"Rebuttal evidence in [a] criminal case is that which is given by the state to explain, repel, counteract, contradict, or

disprove, evidence introduced by or on behalf of the defendant."

Thus, its admission was not erroneous and did not constitute an abuse of the trial court's discretion.

 Defendant's second assignment of error concerns the following portion of the prosecutor's closing argument:

" . . . Now, His Honor, has told you if you find this man guilty, the most you can give him is twenty years in the penitentiary, and I don't intend to beat around the bush about it. The district attorney's office most respectively [sic] asks that you give him twenty years. Now, counsel's going to talk about that and he'll put it in general terms, well, all they want you to do is put him in the penitentiary and throw away the key. Well, I say to you in all fairness you don't have the key. It's not available to you. But, you can put him in the penitentiary and give enough time so that people who have the key can decide when he's able to go out into society and do something."

Defense counsel thereupon objected and moved for a mistrial, to which the trial court replied:

"All right. The objection to the last remark is sustained. The motion for mistrial, however, will be overruled. Ladies and gentlemen of the jury, the last statement in regard to the key to the penitentiary, you are to disregard wholly, not to consider it at all and only confine your deliberations to the evidence you heard in this court and the Instructions given you heretofore which you will take to the juryroom with you to review if you need to."

Defense counsel's objection at trial was well taken, as the prosecutor's remarks clearly alluded to the possibility of parole. As we have repeatedly held, such references are grossly prejudicial to an accused, and constitute the improper injection of administrative procedures into the judicial process. See Bell v. State, Okl.Cr., 381 P.2d 167 (1962). The jury is not to speculate on a defendant's conduct in the penitentiary and the awards of grace he may receive because of good behavior. However, as we also stated in Bell v. State, supra, reversal based upon improper argument is proper only when the argument was grossly improper and unwarranted upon some point which may have affected defendant's rights. While we certainly do not approve of the prosecutor's remarks, we must conclude that they did not significantly prejudice defendant. The court promptly sustained defense counsel's objection and carefully admonished the jury. As pointed out by the State, this tends to cure the erroneous argument. Murff v. State, Okl.Cr., 379 P.2d 710 (1963). It would not, however, cure the error if the jury's verdict nevertheless reflected prejudice from the remarks. Here the State requested a 20 year sentence, but the jury returned a term of only six years, even in the face of overwhelming evidence of guilt. Thus, the verdict was not the result of passion and prejudice, and whatever error existed was adequately expunged by the trial court's admonition. The defendant's second assignment of error is accordingly found to be without merit.

 Defendant's third assignment of error is composed of his objections to two of the instructions which were given by the trial court. In disposing of this proposition we note that while defendant did object to both instructions before they were read, he did not submit written requested instructions for the court's consideration. In Ray v. State, Okl.Cr., 510 P.2d 1395 (1973), we set forth an often repeated rule:

" . . . [W]hen counsel is not satisfied with the instructions, or desires any particular instructions, it is the duty of counsel to prepare and present to the court such desired instructions and request that it be given. In the absence of such a request, this Court will not reverse the conviction if the instructions given cover the relevant subjects, and accurately instruct on the law in the case. Schapanasky [sic] v. State, Okl. Cr., 478 P.2d 912 (1970)."

We find the instructions given in the instant case to be well within the above rule and for that reason we find this proposition of error to be without merit.

Defendant's fourth assignment of error is to the effect that there was an accumulation of errors and irregularities at trial which resulted in a deprivation of defendant's due process right to a fair trial. He maintains that, even if the alleged errors set forth in the above propositions are not found to be grounds for reversal when considered individually, that their cumulative effect was a denial of fair trial. He also alludes to a "transcript replete with error."

In view of our above findings in propositions one through three, we find this assignment of error to be without merit; neither do we find, from a careful reading, that the transcript is replete with error as alleged.

Finding no error which would justify modification or reversal, the judgment and sentence appealed from is, accordingly, Affirmed.

BLISS, P. J., and BRETT, J., concur.