Minerva GARRETT, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–788.

Court of Criminal Appeals of Oklahoma.

Nov. 1, 1978.

Marshall Huser, Wewoka, for appellant.

Larry Derryberry, Atty. Gen., Duane N. Rasmussen, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Minerva Garrett, hereinafter referred to as defendant, was charged in the District Court, Seminole County, Case No. CRF–77–31, with the crime of Murder in the First Degree in violation of 21 O.S. 1976 Supp. § 701.7. She was convicted of Manslaughter in the First Degree for the death of Missie Carpitcher and sentenced to four (4) years' imprisonment in the Oklahoma State penitentiary. From said judgment and sentence, the defendant brings this appeal.

The State's evidence showed that on December 31, 1976, about 9:00 p. m. the defendant announced her intention to her foster grandson that she was "going down there to kill Willett," her foster daughter. Her grandson did not take her seriously, although he said "she looked wild." The defendant walked from her house to the home of Missie Carpitcher, about four houses away, where Willett was. Upon the defendant's entering the house, an argument ensued and the defendant pulled a pistol from her purse. Defendant fired the pistol and Willett Garret was wounded. Aleck Carpitcher, the 20-year-old son of Missie Carpitcher, came forward from his back bedroom, and the defendant shot him, whereupon he lost consciousness. Hobbie Carpitcher, 23-year-old son of Missie Carpitcher, also came forward from a back bedroom and saw that Aleck and Willett were shot. He then heard the defendant say to his mother, "I been wantin' you a

long time." The defendant shot Missie from a distance of about two feet. The defendant then turned and told Hobbie, "if you want some of this, I'll give you some of it." The defendant then pulled the trigger but the gun jammed. Missie shoved the defendant out the door where the gun fell free, and the defendant left.

Later that evening, Missie was driven to the Valley View Hospital at Ada, Oklahoma. After the police arrived on the scene, the gun was discovered in a ditch about 50 feet from the house. Robert Harjo, brother of Missie Carpitcher, gave the gun to Officer Ablah, of the Konawa Police Department. The pistol was a .32 caliber semiautomatic Colt. Missie Carpitcher told Officer Ablah that the defendant had shot her. Officer Ablah placed the defendant under arrest and read her the Miranda rights. He stated that the defendant said, "I tried to kill them. I hope they die." The police also discovered four spent shell casings and two .32 caliber bullets in Missie's house. The pistol and slugs were sent to the OSBI laboratory.

Tom Jordan, firearms and tool mark examiner with the OSBI, ran a ballistics test and found that the two slugs came from the .32 caliber Colt.

Dr. Gullett, of the Valley View Hospital at Ada, Oklahoma, testified that he performed emergency surgery on Missie Carpitcher on the evening of December 31, 1976. He testified that she had been shot in the abdomen. The bullet punctured the small and large intestines before exiting through her back. Missie appeared to be recovering normally until the day of her death on January 14, 1977, when she began to complain of chest pains. Dr. Gullett stated that she apparently died of a pulmonary embolus. He testified that a pulmonary embolus is often a postoperative occurrence. In his opinion, but for the bullet entering her body, her death would not have occurred under the circumstances in which death did occur.

The defense called Dr. Milton Vogt who stated that he had treated both the deceased and the defendant for heart prob-

lems. He and four other witnesses also testified to the good character of the defendant.

Willett Garrett, for the defense, testified that she was 15 years of age and had been having sexual intercourse with Aleck Carpitcher since she was 14. She testified that Aleck's family, including the deceased, were aware of this relationship. On the evening of December 31, 1976, she was at the deceased's house watching television and Hobbie and Aleck Carpitcher were sniffing paint. She stated that when the defendant arrived she looked like "she had gone berserk." Willett Garrett stated that during the argument the deceased slapped the defendant.

The defendant testified that she was 80 years old and had never had any children of her own, but had raised 12 children. She testified that she became aware that something wrong was happening between Willett and Aleck. She had gone twice to the District Attorney of Seminole County, Mr. Powell, to have it stopped but nothing was done. She denied saying she was going to kill Willett. The defendant identified the pistol as belonging to her and that she always carried it in her purse. She remembered walking to the deceased's house on the evening of December 31, 1976, to get Willett. She also remembered the argument with the deceased and that the deceased struck her. She did not remember shooting anyone.

The defendant's first assignment of error is that the State failed to prove the defendant's sanity beyond a reasonable doubt, where the defendant had offered sufficient evidence to raise a reasonable doubt as to her sanity. We have stated that the presumption of sanity prevails until overcome by sufficient evidence to raise a reasonable doubt of defendant's sanity, and then the burden is on the State to prove the defendant's sanity beyond a reasonable doubt. *Whisenhunt v. State*, 279 P.2d 366 (1954). We also said in *Whisenhunt* that the test of criminal responsibility for committing an act which is declared to be a crime is fixed at the point where the

accused has mental capacity to distinguish between right and wrong as applied to the particular act and to understand the nature and consequences of such act. See also, *Gresham v. State*, Okl.Cr., 489 P.2d 1355 (1971). The evidence that the defendant looked "wild" or "berserk" or her own testimony of loss of memory is not evidence that brings the defendant within the above rule to show that she did not know right from wrong. As we said in *Whisenhunt*, "Until legal insanity was established there was not sufficient evidence to create that reasonable doubt required by law to shift the burden of proving defendant's sanity to the state." The question of the defendant's sanity at the time of the shooting was a question of fact for the jury. The jury heard the testimony of the witnesses concerning how the defendant seemed and the defendant's own testimony as to her loss of memory. Although defendant said she could not remember the shooting, she did remember the surrounding circumstances, including the walk to the deceased's house, the defendant's conversation with her daughter, the argument between the defendant and the deceased, and that the deceased hit her. The jury was properly instructed, and there is sufficient evidence to support their finding. Therefore, it is not for this Court to weigh the evidence. See, *Jones v. State*, Okl.Cr., 479 P.2d 591 (1971).

In her second assignment of error, the defendant asserts that the homicide of Missie Carpitcher was justifiable and that the defendant was trying to prevent the continued statutory rape of her 14-year-old foster daughter. The defendant relies principally on the case of *Litchfield v. State*, 8 Okl.Cr. 164, 126 P. 707 (1912), in which the defendant claimed he shot a man because he thought the man was attempting to rape his daughter. The Court recited what instruction the trial court should have given on the issue of whether this was justifiable homicide.

▮ In the present case, the trial court instructed the jury on justifiable homicide, and the evidence presented to them was sufficient to support their finding. The evidence shows that when the defendant entered the deceased's home that evening her foster daughter, Willett, was not in imminent danger from any member of the household. The defendant had been aware of the relationship between her foster daughter and Aleck Carpitcher prior to this incident. The evidence does not show that the circumstances then confronting the defendant justified her shooting four people. The defendant cannot be justified in taking the law into her own hands to stop the ongoing relationship between her foster daughter and Aleck Carpitcher. As we said in *Haines v. State*, Okl.Cr., 275 P.2d 347 (1954), the Court of Criminal Appeals "does not weigh the evidence in a homicide prosecution and determine a conflict, since those are matters for the determination of the jury under proper instructions. . . ." (Citation omitted)

Because of the defendant's age and physical condition, we would direct the defense attorney's attention to 22 O.S.1971, § 994.

For the foregoing reasons the judgment and sentence is *AFFIRMED*.

BUSSEY, P. J., and CORNISH, J., concur.