Donald Richard MAGHE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-79-646.

Court of Criminal Appeals of Oklahoma.

Nov. 14, 1980.

Laub & Stringer by Thomas H. Stringer, Jr., Henryetta, for appellant.

Jan Eric Cartwright, Atty. Gen. of Oklahoma, C. Elaine Alexander, Asst. Atty. Gen., Richard Parrish, Legal Intern, for appellee.

## OPINION

CORNISH, Presiding Judge:

This is an appeal by Donald Richard Maghe from a conviction for Murder in the

First Degree in the District Court of Okmulgee County, Oklahoma, Case No. HCRF–78–71. He is presently incarcerated serving a life sentence following the barroom shooting death of his estranged wife. The record reflects the appellant entered the crowded Cuban Bar in Henryetta, Oklahoma, on October 17, 1978, took deliberate aim, and twice shot his victim with a .22 caliber rifle.

## I.

■ Presented as the first issue is whether the trial court erred in refusing to provide funds to the appellant for the purpose of independent psychiatric examination. It is the appellant's position that he was denied the right to a fair trial in light of his insanity defense and his past record of mental problems. He argues the right of an indigent criminal defendant to a psychiatrist at State expense is an integral and essential part of his constitutionally guaranteed right to counsel.

Admittedly, and as pointed out by the appellant, the assistance now sought at the State level is available to a federal indigent criminal defendant pursuant to subsection (e) of the Criminal Justice Act of 1964, as amended (18 U.S.C.A. § 3006A(e)).

However, as noted in *Hardt v. State*, Okl.Cr., 490 P.2d 752 (1971), State Legislators could appropriately provide impecunious defendants with this aid if deemed practicable and in the public interest. In the absence of enabling legislation, we know of no judicial precedent, constitutional mandate, or statutory authority in Oklahoma obligating this State, at its expense, to make available to the appellant, in addition to counsel, the full paraphernalia of defense.

Applicable to and dispositive of the appellant's contention is *Bills v. State*, Okl.Cr., 585 P.2d 1366 (1978):

> With reference to the trial court's failure to provide funds for an investigator and an independent psychiatrist, this Court in *Huitt v. State*, Okl.Cr., 562 P.2d 873 (1977), recently reaffirmed its decision in *Hardt v. State*, Okl.Cr., 490 P.2d 752 (1971), that under the statutes of the State of Oklahoma trial courts are without authority to comply with such requests. See also *Bias v. State*, Okl.Cr., 561 P.2d 523 (1977).

See also *Stidham v. State*, Okl.Cr., 507 P.2d 1312 (1973); and Anno. 34 A.L.R.3d 1256 (1970).

## II.

The appellant next complains the State was allowed to introduce improper rebuttal testimony. He relies exclusively on two citations to the Oklahoma Evidence Code but fails to cite any judicial precedent.

■ A review of the complained of testimony discloses two objections by defense counsel to repetitious matter regarding appellant's mental condition at the time of the homicide. This testimony was proper rebuttal due to the fact that the appellant's sanity was made an issue at trial during the defense's case in chief.

While the admission of improper evidence in rebuttal in a closed case might be grounds for reversal under *Curcie v. State*, Okl.Cr., 496 P.2d 387 (1972), similar evidence has more recently been held admissible where not prejudicial to the accused. *Sam v. State*, Okl.Cr., 523 P.2d 1146 (1974). We find the appellant was not prejudiced by this testimony.

## III.

The appellant next contends that the evidence as to his insanity was uncontroverted and, thus, the verdict was contrary to the law and the evidence. The record does reflect that the appellant has a prior history of mental problems beginning in Korea in 1953, as well as two hospital commitments for alcoholic treatment. There was, however, additional evidence by the prosecution to show the appellant's sanity at the time of the shooting and his actions, from which his mental state could be inferred. This testimony includes that of the Otasco salesman who sold the appellant the murder weapon and several law enforcement personnel.

It is well settled that the question of sanity at the time of the commission of an alleged offense is a question of fact for the jury. *Wilson v. State*, Okl.Cr., 568 P.2d 1279 (1977). Evidently the jury was not persuaded by the self–serving statements of the appellant and his sister.

Although the appellant did not remember purchasing the rifle or shooting his wife, he did recall standing in the Cuban Bar with the rifle in his hands and having a conversation with his wife, during which she told the appellant she was leaving him for another man. Erratic behavior and mere loss of memory have been held insufficient to shift the burden of proving the appellant's sanity to the State. *Garrett v. State*, Okl.Cr., 586 P.2d 754 (1978). We find the jury was properly instructed, and there is sufficient evidence to support their finding of the appellant's sanity.

## IV.

Relying on *C. G. H. v. State*, Okl.Cr., 580 P.2d 523 (1978), the appellant contends that it was error for the trial court to admit testimony by various law enforcement officers because the State failed to show that the appellant had knowingly and intelligently waived his right to remain silent. It is undisputed that the appellant was given the *Miranda* warnings and that the appellant thereafter made statements to the police at the time of and immediately following his arrest.

While there is some testimony tending to show that the appellant did not seem fully aware of what was going on around him (portions of the preliminary hearing transcript read into the trial record), there was a greater quantum of evidence reflecting that the appellant waived his right to remain silent. Testimony of Officer Copeland indicates that the appellant was read the *Miranda* rights and responded affirmatively when asked if he understood the rights. The testimony of other officers reflects the appellant was rational, his language was understandable and coherent, and "he seemed to know what he was doing." We conclude the appellant's argument is without merit.

## V.

Complained of in the next assignment of error are two of the Court's Instructions, No. 2 and No. 6. The appellant asserts that Instruction No. 2 is misleading, confusing and unnecessary in that: (1) it fails to clarify the term homicide for the jury; and (2) the category of "aiding suicide" is surplusage.[1]

We first observe that the appellant failed to object to Instruction No. 2 at trial. It is the general rule that where a defendant fails to object to instructions given and does not submit requested instructions, and where the instruction given adequately covered the subject matter of inquiry, any error was waived. *Kelsey v. State*, 569 P.2d 1028 (1977). While we agree that the language "or of aiding suicide" is surplusage in this case, the appellant fails to demonstrate to this Court any prejudice thereby. Nor is there an affirmative showing that the jury was misled.

With reference to Instruction No. 6,[2] the appellant argues its language defining insanity by the phrase a "perverted and deranged condition of the mental faculties" is a misstatement of the law. He asserts that this language is not contained in the M'Naghten Rule, which is the exclusive test to determine the question of sanity. *Suits v. State*, Okl.Cr., 507 P.2d 1261 (1973).

1. Instruction No. 2 provides:
   Homicide is either:
   1. Murder;
   2. Manslaughter;
   3. Excusable homicide; or,
   4. Justifiable homicide.
   No person can be convicted of murder or manslaughter, or of aiding suicide, unless the death of the person alleged to have been killed and the fact of the killing by the accused are each established as independent facts beyond a reasonable doubt.

2. Instruction No. 6 provides:
   You are instructed that the term 'insanity' as used in this case means a perverted and deranged condition of the mental faculties which render a person incapable of distinguishing between right and wrong, and incapable of understanding the nature and consequences of the particular act.

When considering instructions the reviewing court will review them as a whole and if, when so considered, the instructions fairly and correctly state the law applicable to the case, they will be deemed to be sufficient. *Cantrell v. State*, Okl.Cr., 562 P.2d 527 (1977). In this case there was an additional Instruction No. 8 discussing insanity.[3] When taken together Instructions Nos. 6 and 8 make it clear that the Oklahoma test for insanity is whether the appellant knew right from wrong and could appreciate the wrongfulness of his acts at the time of commission. We, therefore, hold that while the phrase "a deranged or perverted condition" may be misleading in itself, it is clear when construed in conjunction with the court's other instructions on insanity.

3. Instruction No. 8 provides:

The defendant has interposed as one of his defenses the plea of insanity.

In this connection you are instructed that under the law of this state an act done by a person in a state of insanity cannot be punished as a public offense, and the following persons are incapable of committing crimes, that is to say, lunatics, insane persons and all persons of unsound mind, including persons temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness.

The law presumes every person to be sane and able to distinguish right from wrong as applied to any particular act, and to understand the nature and consequences of such act, until a reasonable doubt of his sanity is raised by competent evidence, and it is an essential ingredient of a crime that a person, to be guilty of such crime, must have at the time of its commission, sufficient mental capacity and reason to enable him to distinguish between right and wrong as applied to the particular act that he is then about to do. It is not every derangement of the mind that will excuse one from punishment for the commission of crime. Although one may be in a diseased or unsound condition of mind brought on by any condition or produced by any cause, if at the time he commits the crime he knows and understands it is wrong and criminal to commit such act, and has sufficient mind to apply that knowledge to his own acts, and to know that if he does commit such act he will do wrong and subject himself to punishment, then and in that event such diseased or unsound condition of mind is not sufficient to excuse him from criminal liability.

## VI.

The final argument made is that the trial court erred in its identification of the victim as Sharon Mae Kelley rather than Sharon Maghe. The record reflects that the appellant and the victim were separated, although they had been common—law husband and wife. Considering the appellant's failure to cite any authority in support of his contention and the fact that both names were used interchangeably at trial, we find that the appellant's claim is without foundation.

The judgment and sentence is AFFIRMED.

BRETT and BUSSEY, JJ., concur.

When the plea of insanity is interposed, the burden of the proof is on the defendant, unless the evidence on the part of the State is sufficient for that purpose, to introduce sufficient evidence to raise in the minds of the jury a reasonable doubt of the defendant's sanity. It is not required that the defendant shall prove his insanity to the satisfaction of the jury beyond a reasonable doubt, or by a preponderance of the evidence. It is sufficient if only he introduces sufficient evidence to raise in the minds of the jury a reasonable doubt of his sanity, and when this is done the burden of proof is on the state to prove the sanity of the defendant by competent evidence, beyond a reasonable doubt, before the jury would be justified in convicting the defendant.

You are therefore instructed that if, after considering all the evidence in this case, you believe beyond a reasonable doubt that at the time he fired the fatal shots that took the life of the deceased, the defendant knew the nature and consequences of his act and knew that it was wrong to shoot said Sharon Mae Kelley and was able to distinguish between right and wrong as applied to said act, then and in that event you would not be justified in acquitting him by reason of insanity. On the contrary, if, after considering all the evidence in the case, you entertain a reasonable doubt as to whether the defendant was mentally competent to understand the nature and consequences of his act, and to distinguish between right and wrong as applied to said act, and to know that it was wrong to shoot the deceased, then and in that event it is your duty to resolve that doubt in his favor and acquit him on the ground of insanity, and state that fact in your verdict.