**Barbara FOSTER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–81–402.**

Court of Criminal Appeals of Oklahoma.

Jan. 4, 1983.

Jan Eric Cartwright, Atty. Gen., Dena L. Bates, Asst. Atty. Gen., Oklahoma City, for appellee.

S. David Hopper, Watonga, for appellant.

## OPINION

CORNISH, Judge:

The appellant, Barbara Lynn Foster, was convicted in the District Court of Blaine County of Murder in the Second Degree and sentenced to life imprisonment.

On July 19, 1980, the appellant was admitted to the emergency room of a local hospital for vaginal bleeding. The physician determined that she had recently given birth. When she denied having a baby, a search was conducted at her residence. A newborn infant was discovered in a trash can in the appellant's backyard. An autopsy showed death to have resulted from four stab wounds to the chest area. Four days later the appellant made a statement to the police in which she admitted stabbing her baby and placing it in the trash can.

The appellant was committed to Western State Hospital at Fort Supply, Oklahoma, for observation and examination to determine her competency and ability to distinguish between right and wrong and to understand the nature and consequences of the acts for which she was accused. She was discharged on August 12, 1980. At trial, the appellant presented a defense of temporary insanity at the time of the incident.

### I

The appellant argues she was denied due process of law and protection against self-incrimination by the trial court's refusal to authorize funds for independent psychological examinations of her.

We have previously addressed this issue and have explicitly held that trial courts are without the authority to comply with requests for funds for an independent psychiatrist. *Bills v. State,* 585 P.2d 1366 (Okl.Cr.1978). As we stated on the same issue in *Maghe v. State,* 620 P.2d 433 (Okl. Cr.1980):

... State Legislators could appropriately provide impecunious defendants with this aid if deemed practicable and in the public interest. In the absence of enabling legislation, we know of no judicial prece-

dent, constitutional mandate, or statutory authority in Oklahoma obligating this State, at its expense, to make available to the appellant, in addition to counsel, the full paraphernalia of defense. Id. at 435.

Therefore, this assignment of error is without merit.

## II

It is next urged that the trial court erred in admitting the appellant's confession because she lacked the mental capacity to make a knowing and voluntary waiver of her right to remain silent.

An *in camera* hearing was held in which the trial court determined the admissibility of statements made by the appellant to O.S.B.I. Agent Dennis Smith. Smith's testimony shows that the appellant, voluntarily submitted to the police interview after her release from the Watonga hospital. She was accompanied to the police station by her father. The interview was conducted by Smith in the Sheriff's office and lasted approximately one hour and forty minutes. At the outset, Smith informed the twenty-five-year old woman that she was not under arrest and was free to leave at any time. He ascertained that she was able to read and that she had a high school education. Smith testified that as he read her the *Miranda* warnings he paused after reading each right to explain it and to ask if she understood. After orally stating she understood her rights, she signed a waiver form, containing the warnings which she had also read.

Smith stated that Ms. Foster did not appear to be under the influence of drugs or intoxicants. He testified he advised her that his purpose was to question her about the death of her baby and that she was a suspect on a murder charge. Ms. Foster said she would cooperate, and then began to answer Smith's questions.

■ The ultimate test for voluntariness of a confession is whether it was the product of an essentially free and unconstrained choice by its maker. *Schneckloth v. Bustamonte,* 412 U.S. 218, 225, 98 S.Ct. 2041,

2047, 36 L.Ed.2d 854 (1973). In determining whether a defendant's will was overborne, the court will look to the totality of the circumstances—which include both the characteristics of the accused and the details of the interrogation. *Schneckloth,* supra.

Low intelligence of the accused is recognized by the Supreme Court as one of several factors to be considered. See, *Schneckloth,* supra. It is therefore not necessarily a single controlling criterion. Additionally, we have held that the test is whether despite a low emotional or mental stability, the accused is nevertheless capable of understanding the meaning and effect of his confession. *Moles v. State,* 520 P.2d 822 (Okl.Cr.1974). Therefore the appellant's assertion that her mental capacity prevented her from making a knowing and voluntary waiver of her right to remain silent will not invalidate the confession absent a showing that her mental deficiencies and/or mental disorders were of such a magnitude as to render her incapable of understanding her rights and the consequences of her confession. See, *Phillips v. State,* 650 P.2d 910 (Okl.Cr.1982).

Our review of the entire record shows that when Ms. Foster was admitted to the Watonga hospital, the attending physician found that she responded appropriately and with comprehension to direct questions asked of her. Throughout her stay at the hospital, she did, however, deny ever having given birth. The physician further testified that he was of the opinion that Ms. Foster knew the difference between right and wrong on July 19, 1980, the day he initially examined her.

■ We therefore find that the evidence shows the appellant possessed the mental capacity to make a knowing and intelligent waiver of her rights after having been carefully advised of those rights. Furthermore, there were no circumstances of detention prior to questioning and the questioning was not conducted in a repeated and prolonged manner.

The appellant also contends the confession was given only as a result of improper

threats made by police toward her family members. During questioning the appellant was informed by the interrogating officer that there was substantial evidence indicating that she had recently given birth, and that physical injury had been done to the child. It is further alleged the officer stated that if she had not inflicted the injury, her grandmother and father would become suspects.

■ A threat by police to arrest or punish a close relative, or a promise to free the relative in exchange for a confession, may render an admission invalid; however where no express or implied promise or threat is made by police, a suspect's belief that his cooperation will benefit a relative will not invalidate an admission. *People v. Steger,* 16 Cal.3d 539, 128 Cal.Rptr. 161, 546 P.2d 665 (1976). Where it is claimed that concern for a relative motivated a confession, significant factors to be considered are whether the defendant agreed to answer questions following *Miranda* warnings; whether the defendant rather than the police initiated the discussions concerning the relative; and whether the authorities are honest with the accused. *State v. Ferguson,* 119 Ariz. 55, 579 P.2d 559 (1978).

In *Pate v. State,* 361 P.2d 1086 (Okl.Cr. 1961), we refused to invalidate a confession on the claim that the defendant was told that if the investigation revealed his family members were not involved in the incident they would be released from custody. Relying on *Pate,* the Arizona court in *Ferguson,* supra, held:

> Even if the police first mention the possibility of jailing a relative, such statements do not make a confession inadmissible where they are not threats or promises to induce a confession, but only point out the obvious fact that if the guilty person is found it will be unnecessary to hold others. [Citations omitted.]

■ The record here shows that in the initial stages of investigation the police could have reasonably regarded other family members residing at the home as suspects; that the appellant agreed to answer questions, following *Miranda* warnings before any mention of her relatives was made; and that the officer made no promises or threats and was candid in his questioning.

■ Additionally, the fact that Ms. Foster's confession was drawn out by questioning along with honest confrontation of the nature of some of the evidence against her, does not serve to invalidate voluntariness under the facts and circumstances here. See *Dennis v. State,* 561 P.2d 88 (Okl.Cr. 1977).

We find that the trial court's ruling permitting the introduction of the confession was supported by sufficient evidence that the statements were voluntarily given. That ruling will therefore not be disturbed on appeal. See *Kelsey v. State,* 569 P.2d 1028 (Okl.Cr.1977).

### III

■ The appellant next argues that the trial court erred by limiting testimony of her expert witness, a clinical psychologist, Dr. John Call. The court allowed Dr. Call to give expert testimony regarding the appellant's mental state, which included his evaluation of her as being "mildly mentally retarded." However, it sustained the State's objection to questions regarding the appellant's physiological condition at the time of the incident. The court ruled that this testimony would not be allowed absent a showing of the witness's qualifications to formulate such an opinion. The question of competency of a witness to testify as an expert is largely a matter of discretion for the trial court and it requires clear proof of error to warrant reversal. *Box v. State,* 541 P.2d 262 (Okl.Cr.1975). The testimony of a psychologist may not reach that level of a trained doctor of medicine, or of a psychiatrist. *Carter v. State,* 376 P.2d 351 (Okl.Cr.1962).

Therefore, we find that the trial court properly acted within its discretionary powers in limiting the testimony.

### IV

In her fourth assignment of error, the appellant argues that the trial court erred

by its failure to supplement the general M'Naghten instruction by including the separate defense of unconsciousness.

The defense of unconsciousness may be used in situations where otherwise criminal conduct of an individual is the result of an involuntary act which is completely beyond the knowledge and control of that individual. This defense is totally separate from a defense of insanity. *Jones v. State,* 648 P.2d 1251 (Okl.Cr.1982).

■ The appellant's argument centers on testimony given by her grandmother that she appeared to be sick and "seemed to be having her mind in other places besides there," and that "she just did not seem to be herself." Instructions on a theory of defense need not be given when the evidence presented at trial does not support that theory. *Martley v. State,* 519 P.2d 544 (Okl.Cr.1974), *cert. denied,* 419 U.S. 863, 95 S.Ct. 116, 42 L.Ed.2d 99. Where the record is devoid of any evidence other than vague statements by witnesses that a defendant was not acting normally, instructions on the defense of unconsciousness need not be given. There is no error.

## V

In her fifth assignment of error, the appellant asserts that the verdict of Murder in the Second Degree was against the clear weight of the evidence.

■ Where sufficient evidence in the record exists from which the jury could conclude that the defendant was guilty, this Court will not interfere with that determination, even though the evidence may be conflicting, on the grounds that the evidence was insufficient. *Moore v. State,* 553 P.2d 209 (Okl.Cr.1976).

■ The appellant presented a defense of temporary insanity to the jury; the State presented evidence indicating that the appellant had the ability to distinguish right from wrong at the time of the incident. The question of the defendant's sanity at the time of the commission of an alleged offense was a question of fact for the jury. *Maghe v. State,* 620 P.2d 433

(Okl.Cr.1980); *Wilson v. State,* 568 P.2d 1279 (Okl.Cr.1977). Thus, the jury's determination as to the appellant's sanity at the time of the offense will not be disturbed.

■ In the alternative, the appellant asserts that even if the jury's finding of sanity is sustained, the highest punishable offense was Manslaughter in the First Degree. However, the evidence presented clearly supports the jury's finding that the appellant acted in a manner evincing a depraved mind, rather than in the heat of passion. The jury was properly instructed on both degrees of homicide and the evidence was sufficient to sustain the conviction of second-degree murder. We therefore will not disturb the verdict.

## VI

■ The last two assignments of error deal with the trial court's refusal to award court funds for reimbursement of the court-appointed attorney's out-of-pocket expenses and extraordinary expenditures in excess of the statutory maximum; and with the witness fee allowed an expert witness of the defense who was later subpoenaed by the State. These challenges are not within the jurisdiction of this Court, but must be brought in a civil suit against the State. *Bias v. State,* 561 P.2d 523 (Okl.Cr.1977).

For the foregoing reasons the judgment and sentence is AFFIRMED.

BUTT, P.J., concurs.

BUSSEY, J., concurs in results.