Roger Dale HAYES, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–82–466.

Court of Criminal Appeals of Oklahoma.

May 28, 1987.

Rehearing Denied July 15, 1987.

Opio Toure, Sp. Counsel, Appellate Public Defender System, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Thomas L. Spencer, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Roger Dale Hayes, was convicted of Murder in the First Degree in the District Court of Logan County, Case No. CRF–80–160. The jury returned a verdict of guilty and sentenced him to death; judgment and sentence was imposed accordingly.

Carrie Kendall, age 9, was abducted, raped and murdered sometime after 4:00 p.m. on December 14, 1980. Her attacker or attackers killed her by cutting her throat with a very sharp instrument, probably a sharp knife. Her body was found on Monday, December 15th at approximately 9:30 a.m. at a wellsite 3¾ miles south of downtown Guthrie where she was last seen near her home. Appellant was arrested and charged singly with murder in the first degree with malice aforethought.

Appellant's first assignment of error is an objection to his arrest and the use of evidence obtained as a direct result of that arrest. The sheriff, undersheriff and an assistant district attorney from Guthrie went to Coyle to pick up appellant where he was staying with his sister and brother-in-law who had a beer bar. Coyle is a community about 12 miles east of Guthrie. These officers arrived around 5:00 p.m. on December 19, and asked appellant to go to town with them to talk to the O.S.B.I. Appellant testified at the hearing on the motion to suppress that he thought he had to go. A short distance from the house the sheriff stopped the car and gave appellant a *Miranda* warning and then proceeded.

At the Sheriff's Office around 6:00 p.m., two O.S.B.I. agents spoke briefly with appellant then left; around 8:00 p.m., they returned and took him to a nearby motel where they had set up a command post. They began his interrogation at that time and read a *Miranda* warning to him before

proceeding. The Sheriff and the O.S.B.I. agents testified appellant was not under arrest at that time and that his arrest did not come until 2:30 a.m. on the morning of the 20th. In the intervening time two agents questioned appellant; at 11:50 p.m., after another *Miranda* warning, they taped an incriminating statement that is in the nature of a confession. In his statement appellant claims, while acting alone, that he committed the crime. Many of the details he gave, however, were patently erroneous.

Apparently in an effort to reconcile the known facts of the crime with appellant's statement, the officers took him for a ride between midnight and 2:30 a.m. It was after this that the warrantless arrest was made. Appellant's description of the ride was "[A]nd everytime they'd come by a place they'd say 'Don't that look familiar?' like, trying to tell me, well, that's the place the girl was killed."

▮ The thrust of this issue is a contention by appellant that he was actually under arrest when he went with the sheriff at 5:00 p.m.; he thought he had no choice. There is no question there was no probable cause for an arrest at that time. The State contends they had the right to ask appellant to go to the sheriff's office before questioning and that he went voluntarily. They did not advise him he could refuse to go with them.

The uncontroverted testimony was that an O.S.B.I. agent told appellant, when they started the questioning at 8:00 p.m., that he was not under arrest. At no time was he locked up or handcuffed. During the two hours between his arrival at the Sheriff's Office and going to the O.S.B.I. command post appellant was given something to eat and drink and he waited in the dispatcher's office which is a public area.

Appellant cites *Battles v. State*, 459 P.2d 623 (Okl.Cr.1969) as a parallel to the instant case. In *Battles* this Court commented that "the defendant submitted to the officer's request to go to the police department" and it was found to be an arrest. 459 P.2d at 626. In *Battles* the issue was the question of probable cause

for the warrantless arrest not if a "request" to accompany the police was an arrest. The court found the officer had cause to stop Battles and that after the stop there was probable cause to make an arrest. To allow appellant's interpretation would be to take this phrase out of context and create a new body of law not heretofore recognized. We refuse to make this issue a purely semantical argument; an "investigatory detention" may or may not be an arrest. *See Davis v. State*, 640 P.2d 573 (Okl.Cr.1982).

At the motion to suppress hearing, the only evidence appellant offered was his own testimony. He testified he thought he had to do the bidding of the law enforcement people involved. He did not offer any other evidence to support his claim that he was placed under arrest prematurely or at a time earlier than the time specified by the State. We find Hayes was not under arrest until 2:30 a.m. on December 20. *Hommer v. State*, 657 P.2d 172 (Okl.Cr.1983).

■ Appellant's second proposition of error is a claim the inculpatory statement he made to the O.S.B.I. was involuntary. He claims it was involuntary because his arrest was illegal; that he had been in custody for 24 hours before he made the statement; that he has a low I.Q.; that he was handcuffed sometime during the detention in the motel; and that the O.S.B.I. deliberately provoked him by making insulting remarks about his mother and sister. He explained he made the statement to "get them off of my back."

The test to determine if an inculpatory statement or confession is voluntary or involuntary is made by an examination of the "totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *Foster v. State*, 657 P.2d 166, 169 (Okl.Cr.1983). Once the issue is presented the burden is on the State to prove by a preponderance of the evidence that the statement in question was obtained voluntarily. *See Young v. State*, 670 P.2d 591 (Okl.Cr.1983).

As explained in the first proposition, we do not find merit in the claim that appellant was under arrest when he was initially questioned by the O.S.B.I. It is claimed by appellate counsel, however, that 24 hours elapsed between the time the sheriff picked up appellant and when he was turned over to the O.S.B.I. At the hearing held pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), appellant and his sister testified the sheriff arrived around 5:00 p.m. on the 19th. We find the facts to be that appellant gave the inculpatory statement within 3 to 3½ hours after the interrogation began. We do not find the 3 to 4 hour interrogation to be coercive per se.

Low mentality and educational deficiencies are factors to be considered in determining if a statement or confession was voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218 at 226, 93 S.Ct. 2041 at 2047. In the instant case appellant was tested by two psychologists who had, at appellant's request, been appointed by the court to give appellant a battery of psychological tests. They administered an IQ test, academic achievement or function test and two personality inventories. Hayes completed the fourth grade, but functions in the mid-second grade range academically. His mental age is eleven years two months; his chronological age was 23 at the time of the tests. He was described as educable, mentally retarded. The doctor said Hayes' behavior is unpredictable, paranoia is indicated and he can be goaded into doing something.

In reference to the confession, one of the doctors testified that appellant's "[m]anipulation aspect relative to ... the confession would be one that if he confessed would indicate he was manipulating them [the O.S.B.I.] by confession." When asked if Hayes could "knowingly and voluntarily realize what he was doing ..." when he waived his rights the doctor said, "I don't think he really understood the total impact of what was going on at the time." The doctor believed Hayes confessed to relieve his immediate anxiety with little regard for

the possibility that a confession might result in life in prison or death.

Accuracy and truthfulness are not elements of the test to determine if a confession or statement should be suppressed. *Lee v. State*, 637 P.2d 879 (Okl.Cr.1981). A defendant's motives for confessing is a factor for the trier of fact to consider at trial. It is undisputed that appellant has low intelligence and is emotionally unstable, but the evidence did not show he was so mentally deficient or emotionally unstable that he was rendered incapable of making a voluntary statement. We will not disturb the trial court's finding the confession was voluntary. *Foster v. State*, 657 P.2d 166.

Appellant also claims he was handcuffed by the O.S.B.I., although it is not clear when that occurred. The two O.S.B.I. agents present at the interrogation deny he was physically restrained in any way. This is a question of veracity and the trial court believed the agents. We find no cause to hold otherwise. *Miller v. State*, 642 P.2d 276, 298 (Okl.Cr.1982).

The one remaining circumstance which appellant claimed provoked him to confess involuntarily were remarks made by the O.S.B.I. about his family. Having reviewed these remarks we find they were merely derogatory, not threatening or coercive.

Having reviewed the circumstances surrounding appellant's confession as a whole as well as each individual complaint, we find the trial court's ruling was based on sufficient evidence that the confession was voluntary. *Young v. State*, 670 P.2d 591; *Foster v. State*, 657 P.2d 166.

■ Appellant's third proposition of error is an objection to the District Court denying his motion for a change of venue. Appellant points out that Logan County has a population of approximately 25,000 people. He filed copies of 27 newspaper stories that he claims were prejudicial to him. Eight jurors were excused for cause when they admitted they had already formed an opinion. The State argues that all of the remaining jurors said they could decide the case on the evidence and not the publicity. The State also points out that appellant used only 7 of his 9 peremptory challenges. *Stott v. State*, 538 P.2d 1061 (Okl.Cr.1975).

We find from the record that of the 27 news articles presented all of them were published one and one-half years before appellant's second trial which is the trial before this Court. Appellant did not file a new motion for change of venue before his second trial. We do not find an abuse of discretion by the trial court. Appellant failed to show he was deprived of a fair trial due to venue. *Vaughn v. State*, 697 P.2d 963 (Okl.Cr.1985).

■ The fourth assignment of error is an objection to the admission of certain photographic exhibits believed to be more prejudicial than probative. The objection is to the admission of seven color and four black and white photos. All of the photos were taken at the crime scene except exhibits numbered 40 and 41. These two pictures, which were admitted over objection, were close-up color photos taken at the morgue of the victim's neck wound. These two photos demonstrate that only a very sharp instrument could have made the wound, and this evidence is consistent with the expert testimony. *Billy v. State*, 602 P.2d 237, 240 (Okl.Cr.1979). This Court has examined the knife that was introduced as the murder weapon and find it is exceptionally dull and could not be described as a sharp instrument. The probative value of these two exhibits is to appellant's advantage not the State's. The other pictures were taken at the crime scene and are not unduly gruesome; there was no objection at trial to their admission. *See Fields v. State*, 666 P.2d 1301 (Okl.Cr.1983).

■ In the fifth proposition, appellant objects to the school picture of the victim being admitted, although there was no objection at trial. As stated in *Franks v. State*, 636 P.2d 361 (Okl.Cr.1981), *cert. denied*, 455 U.S. 1026, 102 S.Ct. 1729, 72 L.Ed.2d 147 (1982), "This Court cannot conceive of any probative value inherent to this photograph and can only imagine that the State used it to invoke the sympathy of

the jury for this beautiful young victim." This photograph should not have been admitted, however, this error does not require reversal. *Smith v. State,* 650 P.2d 904 (Okl.Cr.1982).

█ Appellant's sixth proposition of error is a claim that reversible error occurred during the guilt/innocence stage with the deliberate introduction of other crimes evidence. Appellant made an oral motion in limine at the start of the trial to prohibit the introduction of the evidence in question; the motion was overruled. The State had not filed a *Burks* notice. *See Burks v. State,* 594 P.2d 771 (Okl.Cr.1979). Although we do not find a *Burks* notice necessary, any error in this regard was waived with the motion in limine. *Stout v. State,* 693 P.2d 617, 626 (Okl.Cr.1984).

█ Appellant cites two separate instances of other crimes evidence being introduced. The first objection was to the State calling a jailer to sponsor exhibit number 39, which was a prisoner processing and detention form. The form showed a knife was returned to appellant on the morning of the crime. The witness was asked to identify the knife that the State believed was the murder weapon. The witness could say only that it resembled the knife appellant had that morning but he thought the knife he returned to him was larger. No details were given for why appellant was in jail.

The State argues this testimony was offered to show opportunity. It was an attempt to connect appellant to the weapon believed by the State to be the murder weapon and it placed Hayes very near the location of the abduction on the morning of the crime. This testimony was not introduced to show appellant's bad character and it had logical relevance. *See* 12 O.S. 1981, § 2404(B). We find, however, this testimony fits in the category of being a mere implication of another crime and *not* other crimes evidence. *See Mahorney v. State,* 664 P.2d 1042 (Okl.Cr.1983).

█ The other claim of other crimes evidence was when two of the State's witnesses testified appellant told them he had just been released from prison. The conversations they were relating took place at a church immediately after the alleged time of the victim's death. The testimony was logically relevant and it was not introduced to merely discredit appellant's character.

The witness' testimony was introduced to establish that appellant had scratches on his cheek. The State was attempting to prove appellant was scratched by the victim. The State's efforts were not entirely successful, however, since the victim's nails were not torn, or broken and apparently no tissue was found under them. The State did show there was a small amount of blood on the victim's finger but it may have belonged to either appellant or the victim since both had type "O" blood. We do not find this testimony should have been omitted. *See Bruner v. State,* 612 P.2d 1375, 1379 (Okl.Cr.1980).

█ In the seventh assignment of error appellant objects to the State being permitted to read the testimony of an absent witness. This is the second time this case has been tried. The witness in question was 9 years old when the case was originally tried. Her testimony consisted of Hayes telling her that he was going to buy her a ring when she is 16 and that he was watching her body.

Appellant makes an argument this was other crimes evidence; appellant claims the jury might have construed this testimony to be child molestation. We fail to see any validity to this notion. The witness was an acquaintance of Hayes' and his family. There is no evidence Hayes made indecent proposals or advances to the child. This testimony does not even constitute the "implication" of another crime. *Mahorney,* 664 P.2d at 1042.

█ Appellant also argues this testimony should not have been admitted because the State did not show due diligence in locating this witness. The child's family had moved since the first trial. An in camera hearing was held for the court to examine the State's efforts in trying to locate the witness. *See Henderson v. State,* 661 P.2d 68, 70 (Okl.Cr.1983). The

prosecution demonstrated that they had leads she had moved to several towns in Oklahoma and school authorities, police and postmasters were contacted. There was also a rumor she had moved to Houston, Texas. The inquiry in Houston was not as thorough as the search made in Oklahoma; it was equally unproductive. The court determined the due diligence test had been met and permitted the testimony to be read. Appellant had cross-examined this witness at the first trial and had seriously undermined her testimony in the process. We do not find appellant's Constitutional rights to confront his accusers was breached by the court's ruling in this matter. *Underwood v. State*, 659 P.2d 948 (Okl.Cr.1983).

The eighth proposition of error deals with the testimony of Donald Hayes, the appellant's brother. The court gave him a *Miranda* warning from the bench and a deputy sheriff made an attempt to arrest him in the courtroom. Appellant's brother testified that he committed the murder not appellant. The objection to the *Miranda* warning and attempted arrest is a claim the judge doubted Donald Hayes' credibility. Appellant believes the jury would have thought the aborted arrest was for perjury. Since Donald Hayes had just confessed, on the witness stand, under oath, to murder it would seem more logical that the failure to arrest him would give the appearance the court thought Donald Hayes was lying about the murder. Appellant called this witness and therefore created this legal dilemma and he did not object at trial. This issue is before the Court for fundamental review only and we find no error. *Smith v. State*, 659 P.2d 330 (Okl.Cr.1983).

In proposition nine appellant claims the jury was not instructed on his theory of defense. Appellant states his theory of defense was that someone else, namely his brother, sister-in-law and a third party, committed the crime in his absence. He does not explain what the missing instruction should contain nor was one requested at trial. We find his defense was the same as his plea which was not guilty.

The jury was instructed that Hayes was presumed innocent until his guilt was found beyond a reasonable doubt. They were also instructed that all of the elements of the crime must be proved by the State before a finding of guilt. We find appellant's defense was sufficiently covered by the instructions given. *Tate v. State*, 664 P.2d 1036, 1039 (Okl.Cr.1983).

In the tenth assignment of error Hayes objects to instruction number five, although no objection was made at trial. This instruction advised the jury against drawing adverse inferences due to appellant's failure to testify. Appellant cites 22 O.S.1981, § 701 as authority for this alleged error. In *Driskell v. State*, 659 P.2d 343 (Okl.Cr.1983) is found a discussion of the current state of the law in Oklahoma, as well as nationally, on the issue of giving a cautionary instruction when a defendant chooses to remain silent at trial. In *Driskell* we specifically excluded the application of 22 O.S.1981, § 701, when a trial judge delivers an instruction such as the one given in the instant case.

The record does not reflect if this instruction was given at appellant's request; likewise, there is no objection in the record. This is a decision that of necessity had to be made by appellant with the advice of his trial counsel. Appellant's appeal counsel objects to the giving of this instruction which we find from the record to be contrary to the acquiescence, if not a specific unrecorded request, by trial counsel this instruction be given. We find, therefore, that this instruction was given on appellant's behalf and does not represent error.

Propositions eleven and twelve are objections to the State including the rape of the victim in the information, introducing evidence of it, and then referring to it in closing argument. Appellant was prosecuted for malice aforethought murder, not felony murder. Appellant objects to the failure of the court to instruct on felony murder as well as malice aforethought murder. He also claims the jury should have been instructed they have to reach a unanimous verdict and to specify which of the two murder theories they

found appellant guilty. Okla. Const. art. 2, § 19.

We dealt with a similar argument in *Blackwell v. State*, 663 P.2d 12 (Okl.Cr. 1983) and rejected it; we find no cause to change that ruling. The rape was admissible evidence because it was an integral part of the events involved in the murder and as such "it had both probative value and logical relevancy." *Blackwell*, 663 P.2d 12, 16. There is no requirement for the State to proceed on dual theories. Only one theory was given to the jury and since they were polled we find their verdict was both unanimous and unambiguous. Appellant did not request these instructions at trial nor did he object to the instructions given. *Stratton v. State*, 643 P.2d 645 (Okl.Cr.1982).

The rape of the victim was referred to in the information. The expert witnesses also testified to vaginal injuries found during the autopsy and evidence was found internally, which was retrieved from a vaginal wash, and externally in the genitalia area in the form of a few kinky or curly black hairs. This evidence implicated someone other than Hayes since none of his body hair fits this description. The rape was part of the res gestae of the murder and was admissible. This case was not tried as a felony murder. The instructions were adequate for a prosecution of First Degree Murder with Malice Aforethought. 21 O.S. Supp.1976 § 701.7. We find no support in the record or the cited authorities for this proposition. *See Vaughan v. State*, 657 P.2d 657 (Okl.Cr.1983).

Appellant's thirteenth assignment of error complains of prosecutorial misconduct in closing argument. The specific comments he finds objectionable have been included in his brief and which, even taken out of context, are not within the realm of prohibitive closing comments. *Wacoche v. State*, 644 P.2d 568 (Okl.Cr.1982). The comments certainly did not determine the verdict. *Black v. State*, 663 P.2d 22 (Okl. Cr.1983); *Smith v. State*, 656 P.2d 277 (Okl.Cr.1982). ·

■ In propositions fourteen and fifteen appellant objects to jury selection. He claims one juror was excused in violation of the tenets expressed in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). We have examined the questions put to this particular juror and do not find a *Witherspoon* violation. It is clear this juror could not give the death penalty no matter what the evidence was. *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Glidewell v. State*, 663 P.2d 738 (Okl.Cr.1983).

■ The other objection is a claim that there was a Federal Constitutional violation. Appellant claims the jury selection process insured that the panel was guilt-prone by virtue of the use of the *Witherspoon* criteria in voir dire. According to appellant, the constitutional infirmity was achieved by excluding a segment of the population from serving on the jury because the death penalty was asked. We have answered this issue in *Hogue v. State*, 652 P.2d 300 (Okl.Cr.1982) and we do not find merit to this argument. The United States Supreme Court has also dealt with this issue in depth in *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) and did not find a constitutional problem. We find Hayes was tried by a jury composed of a fair cross-section of the community.

■ In proposition sixteen appellant claims error occurred when the jury was not instructed that if they could not reach a unanimous verdict for punishment the court would dismiss them and sentence appellant to life imprisonment. *See* 21 O.S. 1981, § 701.11. Trial counsel did not request such an instruction. In support of this motion appellant cites a Louisiana case which we do not find persuasive. *State v. Williams*, 392 So.2d 619 (La.1980). At no time was the court, in the instant case, advised by the jury they were deadlocked. In Oklahoma a trial judge should not resort to giving the instruction found in OUJI–Cr. 442 until it is apparent the jury has exceeded a reasonable time for reaching a decision on punishment. 21 O.S.1981, § 701.11. To hold otherwise would be an unwarranted intrusion in the statutorily provided jury sentencing process. 21 O.S.1981, § 701.10. We have previously considered this proposi-

tion and do not find a compelling reason to reverse our prior holding. *Brogie v. State*, 695 P.2d 538, 547 (Okl.Cr.1985).

The seventeenth assignment of error is a claim that if either one of the two aggravating circumstances instructed on are not supported by sufficient proof then the death penalty must be set aside and a life sentence imposed. *Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983); *Johnson v. State*, 665 P.2d 815 (Okl.Cr.1982). The jury was instructed on two aggravating circumstances: 1) the murder was especially heinous, atrocious, or cruel; and, 2) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1981, § 701.12. The jury found against appellant on both aggravating circumstances, and we find sufficient evidence to support their finding; therefore, this issue is not viable.

In proposition eighteen, appellant claims his eighth and fourteenth amendment rights were breached by the court's failure to define for the jury what "criminal acts of violence that would constitute a continuing threat to society" meant. *See Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Appellant did not object at trial to the instructions given or request an instruction that might define those terms. We find no fundamental error in the instructions given. *Banks v. State*, 701 P.2d 418, 427 (Okl.Cr.1985). *Stratton v. State*, 643 P.2d 645.

The nineteenth proposition of error again claims an abuse of appellant's eighth and fourteenth amendment rights by alleging Oklahoma has been arbitrarily applying the heinous, atrocious or cruel aggravating circumstance in other death cases. We are not persuaded by this argument.

In proposition twenty and twenty-one, appellant contends the aggravating circumstances were not proved beyond a reasonable doubt. The jury reached its verdict after having already heard the testimony concerning the homicide in the first stage of the trial and were thoroughly familiar with the facts proved. There appeared to be little doubt in the minds of the jury that the victim experienced great physical and mental suffering prior to her death. We therefore deny this proposition of error. *See Smith v. State*, 659 P.2d 330 (Okl.Cr. 1983). Likewise, there was sufficient testimony to show that appellant possessed characteristics that might prove he was capable of committing acts of violence in the future. The two aggravating circumstances found by the jury that the crime was especially heinous, atrocious or cruel; and that appellant might conduct future acts of violence will not be disturbed.

In his proposition twenty-two, appellant asserts that the prosecutor was guilty of misconduct in the second stage of the prosecution. Appellant's counsel admits in his brief that no objections were entered during the prosecutor's closing arguments. Ordinarily such failure to object fails to preserve the complained of error for appeal. *See Parks v. State*, 651 P.2d 686, 693 (Okl.Cr.1982). In his brief, appellant asserts that, notwithstanding the failure to object, the prosecutor's remarks constitute fundamental error. After reviewing the closing arguments made by the prosecutor, we do not find appellant's contention of error to be substantial.

Appellant's twenty-third proposition asserts that his counsel was ineffective during the second stage of the proceedings. He primarily complains that counsel placed two psychologists on the witness stand whose testimony on cross-examination tended to backfire. Both psychologists testified as to appellant's low mentality. One doctor indicated that after hypnosis of appellant, he was satisfied in his own mind that appellant probably did not participate in the crime. He also testified that appellant was capable of confessing to crimes in which he had not participated. However, on cross-examination the prosecutor was able to bring out in their testimony that appellant was capable of committing future acts of violence and posed a continuing threat to society because of his psychological characteristics. Appellant's mother testified that her son entered a mental hospital at age twelve. She also bolstered appellant's defense that he was a "chronic con-

fessor." After considering defense counsel's total performance, we are unable to conclude that the results of this trial would have been any different absent errors counsel might have committed. Therefore, we must deny appellant's contention of ineffective counsel. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Appellant's twenty-fourth proposition asserts that the sentence imposed on appellant is disproportionate to sentences imposed in other cases. After carefully considering the record of trial we are bound to conclude that the sentence imposed in this case was not the result of any influence of passion, prejudice or any other arbitrary factor. Likewise, the sentence imposed is not disproportionate to the penalty imposed in similar cases, considering both the crime and the appellant.

■ In a supplemental brief, appellant contends that reversible error was committed when the "not guilty" verdict form was not included in the original record filed with the appeal. The trial transcript reflects that trial counsel did not object to either the instructions or the verdict forms submitted to the jury. Judicial proceedings are clothed with a presumption of regularity, absent some specific showing to the contrary. *See Cunningham v. State,* 600 P.2d 337 (Okl.Cr.1979). This contention of error is denied.

■ Lastly in the supplemental brief, appellant contends that error was committed when the trial court's instructions listed all of the statutory aggravating circumstances as set forth in the statute. However, it is clear that the jury was specifically instructed as to the only two circumstances listed in the bill of particulars, i.e. that the crime was heinous, atrocious or cruel and that the appellant was a continuing threat to society. (Instruction Two, Second Stage of the Trial.) This contention is denied.

NOW THEREFORE, after carefully considering the record of trial in this case, the judgment and sentence are AFFIRMED.

BUSSEY, J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

Although I concur in the affirmance of the judgment and sentence, I write separately to address the prosecutor's misconduct in introducing a "live" photograph of the victim. Such conduct has been consistently condemned by this Court as an improper attempt to inflame the passions and prejudices of the jury. *See, e.g., Newbury v. State,* 695 P.2d 531, 535 (Okl.Cr.1985); *Binsz v. State,* 675 P.2d 448, 451 (Okl.Cr. 1984); *White v. State,* 674 P.2d 31, 36 (Okl.Cr.1983); *Boutwell v. State,* 659 P.2d 322, 326 (Okl.Cr.1983); *Smith v. State,* 650 P.2d 904, 909 (Okl.Cr.1982); *Ritchie v. State,* 632 P.2d 1244, 1246 (Okl.Cr.1981). It is incomprehensible why a prosecutor would risk a reversal or modification by such clearly improper tactics. While I concur in the affirmance of the judgment and sentence of the appellant on this record, I believe that trial judges have an obligation to take affirmative action to prevent such misconduct through the sustaining of objections to the introduction of "before" photographs and by other proper means. In addition, should prosecutors persist in this misconduct, this writer would be inclined to find that defendants who are otherwise not entitled to relief on appeal may be entitled to some form of relief in an appropriate case.